Di Loretto *v.* Marsidell, Inc., Appellant.

Argued October 3, 1963. Before MUSMANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Robert L. Walker,* with him *James P. Bryan,* and *Bryan, Joslin, Bryan & Sesler,* for appellant.

*Lawrence A. D'Ambrosio,* with him *Clifford H. Kahn,* and *Kahn, D'Ambrosio & Fischer,* for appellee.

OPINION BY MR. JUSTICE JONES, May 27, 1964:

Cora Harvey Goodrich (decedent), died April 22, 1952 owning a thirty-five acre tract of land in Conneaut Township, Erie County. At the time of her death the Department of Public Assistance of the Commonwealth (DPA), had a lien against this realty which lien, at all times pertinent to this appeal, remained in full force and effect. Decedent's sole survivor was her husband, Adolphus Goodrich (Goodrich).

On October 10, 1957, Goodrich, *as sole devisee* of this land, granted an oil and gas lease[1] therein to one Albert Di Loretto (Di Loretto). *At that time, decedent's will, under which Goodrich was named both personal representative and sole devisee of this land, had not been probated nor had any letters been issued.* Approximately four years later, decedent's will was probated, letters issued and the estate settled as a small estate, under §202 of the Fiduciaries Act of 1949.[2] Goodrich, *as decedent's personal representative,* was authorized by the Orphans' Court of Erie County to sell the land to one Sidney Stone (Stone), for $2000 and, on August 17, 1961, the deed to Stone was executed and later recorded. On the same date, Stone leased[3] the oil and gas rights in the land to Marsidell, Inc. (Marsidell), and Marsidell went upon the land and discovered gas.

Di Loretto, in reliance on the 1957 lease, then instituted an ejectment action in the Court of Common Pleas of Erie County against Marsidell. Thereafter,

---

[1] Referred to as 1957 lease.

[2] Act of April 18, 1949, P. L. 512, §202, as amended, 20 P.S. §320.202.

[3] Referred to as 1961 lease.

the parties, jointly and upon an agreed statement of. facts, petitioned for a declaratory judgment seeking a declaration whether the 1957 lease had been divested by the sale of the land by Goodrich, as personal representative, to Stone. The court below, declaring that Di Loretto's rights in the land acquired under the 1957 lease had not been divested by the sale, entered judg-' ment for Di Loretto and against Marsidell. From that judgment this appeal was taken.

Di Loretto takes the position that, by virtue of the 1957 lease, he acquired a corporeal interest in the land[4] which was not divested under the provisions of §547 of the Fiduciaries Act of 1949 (20 P.S. §320.547) (the Act); that Goodrich, as personal representative, could not convey to Stone an interest in the land greater than the estate had at that time, i.e., a fee encumbered by the rights granted in the 1957 lease; that the late probate of the will did not alter the situation. Marsidell took the position that, under §104 of the Fiduciaries Act of 1949 (20 P.S. §320.104), Goodrich, as sole devisee of the land, received legal title to the land but that such title was subject to the power and the authority of the personal representative to deal with the realty under §§541, 543 and 547 of the Fiduciaries Act of 1949 (20 P.S. §§320.541, 543, 547) and that any rights acquired by Di Loretto under the 1957 lease were divested by the Goodrich-Stone sale.

We have recently reviewed certain sections of the Act somewhat pertinent to the case at bar: *Quality Lumber & Millwork Co. v. Andrus,* 414 Pa. 411, 200 A. 2d 754. In *Quality,* we noted that: (1) while legal title to realty passes at death to the decedent's heirs or devisees, such passage of title is expressly subject to certain powers of the personal representative to

---

[4] As the court below noted, Marsidell does not dispute that, under the 1957 lease, Di Loretto received a corporeal interest in the land.

deal with the realty (§104, 20 P.S. §320.104); (2) among such powers is that to sell realty, in the event of an intestacy, or, in the event of a testacy if the realty is not specifically devised realty (§541, 20 P.S. §320.541); (3) if a personal representative does sell realty under §541, supra, the quantum and quality of the title passed upon such sale. is determined by the provisions of §547 of the Act (§547, 20 P.S. §320.547).

*Quality* presented a factual situation unlike that in the case at bar. In *Quality,* the personal representative sold under §541, without court approval, since the property was not specifically devised; in the case at bar, the personal representative sold under §543, with court approval, to divest the DPA lien of record existing at time of decedent's death.[5] In *Quality,* the act of the *sole heir* in alienating the realty took place within one year of decedent's death when letters of administration had been issued and were still in effect; in the case at bar, the act of the *sole devisee* in alienating the realty took place more than a year after decedent's death when no letters testamentary had been issued or were in effect.

At the outset, it may be noted that the sale by Goodrich, as personal representative, of the land for the payment of the DPA lien—a lien against the land when decedent died—was proper: §§611, 612 of the Act (20 P.S. §§320.611, 612). The instant challenge is not to the sale but to the impact of that sale on the 1957 lease.

The court below concluded that the 1957 lease remained effective and, in so doing, relied on a construction of both §§547 and 615 of the Act (20 P.S. §§320:547, 615). Impliedly, at least, the court below construed §547 *to* mean that a sale by a personal representative divested only *liens* against the land and

---

[5] *Only* a sale under §543 will divest such liens. Moreover, in the case at bar, the land was specifically devised.

not *estates* granted in the land. With such construction we cannot agree. Inter alia, §547 provides that a personal representative's sale of realty passes *full* title *free and clear* of "all claims of distributees and of persons claiming in their right" and that section embraces within its terms *all* such claims and divests *both* liens and estates in land created by or conveyed post mortem by heirs or devisees without the joinder of the personal representative. Therefore, whether the personal representative's sale be under §541 (as in *Quality*) or under §543 (as in the case at bar), a prior lease conveying a corporeal interest in land is divested by such sale. Such divestiture would take place in the instant situation were it not that the provisions of §615 provide a cloak of protection to the lessee under the circumstances herein present.

Section 615 provides: "All claims against the decedent [except liens and charges existing at time of death] shall become unenforceable after one year from the decedent's death against a bona fide grantee of, or holder of a lien on, real property of the decedent who has acquired his interest for value from or through those entitled to the property by will or by intestacy, either (1) More than one year after the death of the decedent and when no letters issued in the Commonwealth upon the decedent's estate were in effect; or, (2) within such year if no letters upon the decedent's estate have been issued in the Commonwealth during that year. Nothing in this section shall be construed to limit the right of a personal representative subsequently appointed to recover from the heir or devisee the value of the property so sold or encumbered.": (20 P.S. §320.615). The draftsmen of this section clearly intended thereby "to make title to real property freely alienable after one year where (1) no letters are granted or (2) there is a vacancy in letters": Comment, Joint State Government Commission, 20 P.S. p. 243.

Superficially reviewed, §547 may appear to be in conflict with §615. Read alone, §547 appears most broad in the sweep of its language;[6] it can be read in such a manner that a personal representative's sale would pass full title free and clear of "all claims of distributees and persons claiming in their right" *regardless of the time when such claims were created after decedent's death.* However, §547 must be read in the light of §615 and, when so read, the restrictive effect of the latter section becomes manifest and supplies the time element lacking in §547. The legislative intent, garnered from an examination of *both* §§547 and 615, is that one who, in good faith and for value, purchases an interest in realty from, or becomes a holder of a lien on realty, through the heirs or devisees of a decedent is protected from a divestiture of such interest or lien by the terms of §547 *if, but only if,* such interest was purchased or such lien was created either more than one year after decedent's death *and* at a time when no letters—either of administration or testamentary—were *in effect* or within the year after decedent's death *and* at a time when no letters had been *issued.* If the conditions as to time are existent under §615, the terms of §547 as to divestiture of claims do not become effective.[7]

At the time Di Loretto secured his lease more than five years had passed since decedent's death and no letters had either been issued or were in effect. Therefore, under §615, Di Loretto's rights in the 1957 lease secured from Goodrich, as sole devisee, were protected from divestiture or extinguishment.

Judgment affirmed.

---

[6] The legislature should clarify and limit the provisions of §547 so as to render more freely the marketability of a decedent's realty.

[7] The last paragraph of §615—referring to a personal representative's right of recourse against an heir or devisee for the value of the property sold or encumbered—confirms this legislative intent.

Mr. Justice ROBERTS took no part in the consideration or decision of this case.