559 A.2d 574

George MINNO, deceased, by PEOPLES BANK AND TRUST COMPANY, Assignee of Helen Minno, Legatee, Heir and Executrix of George Minno Estate, Appellant,

v.

John RUBAL, o/w John M. Rubal, and Carol Rubal, and R.J. Sepco, Inc., terre-tenant, Appellees.

Superior Court of Pennsylvania.

Submitted Jan. 23, 1989.

Filed May 26, 1989.

Gordon D. Reynolds, Somerset, for appellant.

William R. Carroll, Somerset, for appellees.

Before WIEAND, McEWEN and CERCONE, JJ.

WIEAND, Judge:

The issue in this appeal is whether the lien of a judgment, obtained against one of several devisees of real estate more than five years after the death of the testatrix and after the administrator c.t.a. had made distribution and had been released, is extinguished by the joinder of the administrator c.t.a. in a subsequent conveyance of the real estate by the devisees. The trial court held that the lien of the judgment had been extinguished, dismissed an action to revive the judgment, and held that the judgment could not constitute a lien against the undivided interest owned by the judgment debtor-devisee. We reverse.

Elizabeth Rubal, a widow, died testate on October 11, 1976. At the time of her death, she owned real estate, on which she operated a neighborhood grocery store, in Windber Borough, Somerset County. By her last will and testament, she devised and bequeathed her entire estate in equal shares to her four children: Robert, Paulette, Maryann, and John. Letters of administration c.t.a. were issued to Robert on January 3, 1977, and he posted the necessary bond on January 10, 1977. On March 3, 1977, the four children, individually, executed and delivered a mortgage on the real estate to the Citizens National Bank of Windber as security for a loan of fifty thousand ($50,000.00) dollars. On February 3, 1978, the devisees, in writing, acknowledged receipt of their distributive shares in the decedent's estate, waived their right to a formal accounting, and released the administrator c.t.a. Upon petition, the Orphans' Court of Somerset County entered an order releasing the surety on the bond which had been filed by the administrator c.t.a. The grocery store business continued to be operated thereafter by the children of the decedent.

By May, 1981, however, differences had arisen, and two of the children, Robert and Paulette, had commenced an action to partition the real estate. Then, on January 6,

1982, before partition had been effected, Citizens National Bank filed an action to foreclose the mortgage. On June 18, 1982, George Minno recovered a judgment against John Rubal and his wife, Carol. Minno died on May 7, 1983, and his wife, to whom his interest passed, assigned the judgment to Peoples Bank and Trust Company.

The sheriff's sale in the mortgage foreclosure action was repeatedly postponed to permit a private sale which, it was hoped, would realize funds sufficient to pay the claims of creditors. On August 30, 1984, the real estate was conveyed to R.J. Sepco, Inc. by deed executed by the four children and by Robert Rubal, administrator c.t.a. of the estate of Elizabeth Rubal, deceased. By agreement, all secured creditors and those entitled to a priority were paid in full from the proceeds, and general creditors were paid at the rate of approximately forty ($.40) cents on the dollar. The judgment which had been recovered by George Minno against John Rubal and his wife, however, was overlooked and remained unsatisfied.

On May 20, 1987, the assignee of the judgment, Peoples Bank and Trust Company, began proceedings to revive the judgment against John Rubal and his wife, Carol. Named as terre-tenant therein was R.J. Sepco, Inc. Preliminary objections were filed by the terre-tenant, and, on August 22, 1988, the court entered an order "that defendant Sepco's preliminary objection to Writ of Revival is sustained, the action to revive judgment is dismissed with prejudice as to defendant, R.J. Sepco, Inc., and the judgment and revival thereof shall not constitute a lien on the subject real estate...." The trial court subsequently explained, in its opinion, that it believed the lien against John Rubal's interest had been extinguished by the sale of the real estate to R.J. Sepco, Inc.

Legal title to a decedent's real estate passes at death to his heirs or devisees, subject to powers granted to the personal representative by law or the decedent's will. 20 Pa.C.S. § 301(b). The provisions of 20 Pa.C.S. § 3357 establish pertinently as follows:

## § 3357. Title of purchaser

(a) **General rule.**—If the personal representative has given such bond, if any, as shall be required in accordance with this title, any sale, mortgage, or exchange by him, whether pursuant to a decree or to the exercise of a testamentary power or of a power under this title, shall pass the full title of the decedent therein, unless otherwise specified, discharged from the lien of legacies, from liability for all debts and obligations of the decedent, from all liabilities incident to the administration of the decedent's estate, and from all claims of distributees and of persons claiming in their right, except that no such sale, mortgage or exchange by a personal representative, unless made under section 3353 (relating to order of court) for the purpose of divesting a lien existing at the decedent's death, shall divest the interest of a bona fide grantee of, or a holder of a lien on, real property of the decedent who has acquired such interest for value under a prior recorded document from or through those entitled to the interest of the decedent in the real property by will or by intestacy, either:

(1) more than one year after the death of the decedent and when no letters issued in the Commonwealth upon the decedent's estate were in effect; or

(2) within such year if no letters upon the decedent's estate have been issued in the Commonwealth during that year.

See also: 20 Pa.C.S. § 3385.[1] This divestiture provision was intended to create stability of procedure in the disposition of

1. This section provides as follows:

### § 3385. Limitation upon claims

All claims against the decedent, subject only to the provisions of section 3381 of this code (relating to liens and charges existing at death not impaired) and section 3382 of this code (relating to judgments which are liens at death), shall become unenforceable after one year from the decedent's death against a bona fide grantee of, or holder of a lien on, real property of the decedent who has acquired his interest for value from or through those entitled to the property by will or by intestacy, either:

a decedent's realty and certainty in the marketability of title. *Quality Lumber and Millwork Co. v. Andrus*, 414 Pa. 411, 419, 200 A.2d 754, 759 (1964). "The draftsmen of this section clearly intended thereby 'to make title to real property freely alienable after one year where (1) no letters are granted or (2) there is a vacancy in letters[.]" *DiLoretto v. Marsidell, Inc.*, 414 Pa. 572, 577, 200 A.2d 890, 892–893 (1964), citing Comment, Joint State Government Commission, 20 P.S. p. 243.

> The legislative intent, garnered from an examination of *both* Sections [3357] and [3385], is that one who, in good faith, and for value, purchases an interest in realty from, or becomes a holder of a lien on realty, through the heirs or devisees of a decedent is protected from a divestiture of such interest or lien by the terms of Section [3357] if, but only if, such interest was purchased or such lien was created either more than one year after decedent's death and at a time when no letters—either of administration or testamentary—were in effect or within the year after decedent's death and at a time when no letters had been issued. If the conditions as to time are existent under § [3385], the terms of § [3357] as to divestiture of claims do not become effective.

*DiLoretto v. Marsidell, Inc., supra*, 414 Pa. at 578, 200 A.2d at 893.

In *DiLoretto v. Marsidell, Inc., supra*, a sole devisee of real estate had leased real estate to a third person more than five years after the testator's death. The will was not admitted to probate and letters were not issued until another four years had passed. The land was thereafter sold by the personal representative, who was also the sole devisee, with court approval. Because the lease had been acquired

(1) more than one year after the death of the decedent and when no letters issued in the Commonwealth upon the decedent's estate were in effect; or

(2) within such year if no letters upon the decedent's estate have been issued in the Commonwealth during that year.

Nothing in this section shall be construed to limit the right of a personal representative subsequently appointed to recover from the heir or devisee the value of property so sold or encumbered.

from the sole devisee more than five years after the testator's death and at a time when no letters were in effect, the Supreme Court held that the lease was not divested by the subsequent sale.

A different factual situation was presented to the Supreme Court in *Quality Lumber and Millwork Co. v. Andrus, supra.* There, letters of administration had been issued to the decedent's sole heir, and bond had been posted. Less than a year later, the heir, in her capacity as heir, executed and delivered a mortgage on real estate in favor of Quality Lumber and Millwork Company. Four months later, she represented in a petition to the Orphans' Court that she was the sole heir, that debts and taxes had been paid, and that she was aware of no unfinished estate business. The court, in response, entered an order releasing the surety on her bond. Three years later, the heir, acting in her capacity as administrator, conveyed the mortgaged real estate to a third person after obtaining from the Orphans' Court an order excusing her from filing additional security. Because the mortgage had been executed by an heir within one year following the decedent's death and while letters of administration were in effect, the Supreme Court held that the lien of the mortgage had been divested by the subsequent sale.

In the instant case, the judgment was recovered by appellant's assignor over five and one-half (5½) years after the death of the testatrix. At that time, the estate had been distributed to those entitled thereto, distribution had been acknowledged by the devisees, the administrator c.t.a. had been released by the devisees, and the devisees were in possession of the real estate where they jointly conducted a grocery store. Moreover, upon petition reciting the facts, the Orphans' Court had terminated the administrator's bond and had discharged the surety thereon. If one had examined the record of the Register of Wills Office, he or she would have found that the decedent's estate had been distributed, that the administrator had been released and his bond discharged, and that title to the real estate had

been vested in the decedent's children and devisees. Not only had title vested in the devisees of the testatrix, but no letters of administration were then in effect. Under these circumstances, the lien of appellant's judgment against the undivided one-fourth interest of John Rubal was neither extinguished nor discharged by the fact that the devisees' subsequent deed for the premises was joined by the former administrator c.t.a. of the decedent's estate. The joinder by the administrator was unnecessary to the conveyance of real estate which was then owned by the devisees of the testatrix as tenants-in-common.

We hold, therefore, that when the trial court dismissed appellant's action to revive its judgment and held that the judgment could not constitute a lien against the judgment debtor's one-fourth interest in the real estate, it erred.

Reversed and remanded for further proceedings. Jurisdiction is not retained.