COLONIAL FIRST PROPERTIES, LLC, d/b/a "Gold City," and Linda Peterson, Plaintiffs,

v.

HENRICO COUNTY VIRGINIA, a Virginia Municipal Corporation, and Vernon M. Danielsen, Chairman of the Virginia Alcoholic Beverage Control Board, Defendants.

No. CIV. 3:02CV543.

United States District Court, E.D. Virginia, Richmond Division.

Dec. 17, 2002.

Robert H. Smallenberg, Richmond, VA, E. Lavoyd Morgan, Jr., Lewisburg, WV, for Plaintiff.

Joseph P. Rapisarda, Jr., Tom Tokarz, II, Annie Kim, Henrico County Attorney's Office, Richmond, VA, for Henrico Co.

Allison P. Landry, Neil A. McPhie, Office of Attorney General, Richmond, VA, for Danielsen.

## MEMORANDUM OPINION

PAYNE, District Judge.

Colonial First Properties, LLC operates the Gold City restaurant and bar in Henrico County, Virginia (the "County"). Gold City features live entertainment in the form of semi-nude dancing. Donna White is a shareholder of the LLC and serves as a manager of Gold City. Linda Peterson is an employee of Gold City who desires to offer nude or semi-nude dance performances, including lap-dances,[1] at Gold City.

The County is a political subdivision of the Commonwealth of Virginia and is operated pursuant to its Charter and the Constitution and laws of the Commonwealth. Vernon M. Danielsen is Chairman of the Virginia Alcoholic Beverage Control ("VABC") Board, which is an agency of the Commonwealth established and operating pursuant to laws of the Commonwealth.

When they filed this action, the Plaintiffs challenged the constitutionality of Henrico County's Public Nudity and Adult Business Permit Ordinances, as well as the VABC Board's regulations prohibiting "lewd and disorderly" conduct on licensed premises. After the County agreed not to enforce the Adult Business Permit Ordinance against Colonial First, the Plaintiffs abandoned their attack on that ordinance.[2]

---

1. Lap dancing consists of physical contact between the genital areas of a scantily clad female dancer and fully clothed male customers. In essence, the term is a euphemism for simulated coitus in which the female dancer gyrates her genital area on the male customer's genital area. No court has ever held that this conduct enjoys the First Amendment protection extended to nude, or semi-nude, dancing by decisions of the Supreme Court of the United States.

2. At the hearing on October 23, 2002, the County assured the Plaintiffs that it would not prosecute Gold City for failure to have an Adult Business Permit until the pending proceedings in the Virginia courts, as well as any appeal from this decision, are complete. In light of that representation, the parties en-

The Plaintiffs now seek a declaration that the County's Public Nudity Ordinance and the VABC Board regulation are unconstitutional, and they ask that further enforcement of both be enjoined. Plaintiffs also claim that Henrico County, in enacting the Public Nudity Ordinance, exceeded its authority to act under Virginia law.

Each defendant has filed a motion to dismiss. The County bases its motion to dismiss on the abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Danielsen has filed two motions to dismiss. The first challenges Linda Peterson's standing to contest the VABC Board regulations at issue here. The other urges abstention under either the *Younger*, *Pullman*, or *Burford* abstention doctrines.[3]

## STATEMENT OF FACTS

### A. The County's Prosecutions Of Gold City Entertainers Under The Public Nudity Ordinance Before It Was Amended

This action arises out of the ongoing dispute between the parties concerning Colonial First's attempt to operate a nightclub featuring performances by semi-nude entertainers. In late June 2001, Colonial First applied for and received a business license from the County to operate the Gold City nightclub, the only nightclub in the County offering semi-nude entertainment in which women dance while clad only in G-strings and pasties. On July 6, 2001, Gold City opened for business and that very evening, the Henrico County Police Department visited Gold City to ensure compliance with Henrico County Code § 13–107, which, before amendment in March, 2002, stated:

(a) As used in this section, the term "state of nudity" means a state of undress so as to expose the human male or female genitals, pubic area or buttocks or to cover any of them with less than a fully opaque covering, or the showing of the female breast or any portion thereof below the top of the nipple, or the covering of the breast or any portion thereof below the top of the nipple with less than a fully opaque covering.

(b) Every person who knowingly, voluntarily and intentionally appears in public or in a public place or in a place open to the public or open to public view in a state of nudity, or employs, encourages or procures another person so to appear, shall be guilty of a misdemeanor punishable by confinement in jail for not more than six months or a fine of not more than $500.00, or both.

(c) Nothing contained in this section shall be construed to apply to the exhibition, presentation, showing or performance of any play, ballet, drama, tableau, production or motion picture in any theater, concert hall, museum of fine arts, school, institution of higher learning or other similar establishment which is primarily devoted to such exhibitions, presentations, shows or performances as a form of expression of opinion, communication, speech, ideas, information, art or drama.

Because the ordinance requires a woman to be clad so that neither any portion of her breast below the top of the nipple, nor any part of her buttocks be exposed, the Henrico Police determined that the dancers at Gold City who were clad only in G-

---

tered a Consent Order on October 28, 2002 whereby the claims against the County respecting the Adult Business Permit Ordinance were dismissed without prejudice.

3. *See Railroad Comm'n of Texas v. Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

strings and pasties violated the ordinance. Over the next several days, Henrico Police issued summons against twelve Gold City entertainers for violating the ordinance, and against Donna White and Diana White, both of whom are managers and shareholders of the enterprise, for aiding and abetting violation of the ordinance.

Colonial First and two of its entertainers then filed an action in federal court seeking declaratory, injunctive, and monetary relief, alleging that the ordinance violated their First Amendment Free Speech rights. In light of the pending criminal cases in state court, the Court abstained from deciding the constitutional challenges to the Public Nudity Ordinance. *See Colonial First Properties v. Henrico County*, 166 F.Supp.2d 1070 (E.D.Va.2001) (*"Colonial First I"*). The state court subsequently found Donna and Diana White, along with the twelve entertainers mentioned above, guilty of violating the ordinance. In so doing, the state court cursorily denied the defendants' constitutional challenges to the Public Nudity Ordinance. Donna White's conviction is presently on appeal to the Virginia Court of Appeals. After the state court trials, the Court dismissed *Colonial First I* without prejudice.

In October 2001, Henrico County charged Gary White, who is Donna White's husband and who serves as a Gold City manager, with aiding and abetting public nudity in violation of the Public Nudity Ordinance. Mr. White subsequently was found guilty of the violation in Henrico County Circuit Court, a conviction he has not appealed.

## B. The VABC Board's Actions Against Colonial First/Gold City

Under Danielsen's direction, the VABC Board also has challenged the manner in which Gold City conducted its business. In early July 2001, the VABC Board charged Gold City with allowing "lewd or disorderly conduct" on its premises in violation of Code of Virginia § 4.1–225(1)(h) as amplified by Title 3 of the Virginia Administrative Code § 5–50–140, which allows dancers clad in pasties and G-strings to perform only when on a stage and separated from patrons.[4] The VABC Board alleged that its regulations were violated when three entertainers performed lap dances on undercover Henrico Police Officers, and a fourth entertainer exposed her genital area to an undercover officer. Af-

4. Code of Virginia § 4.1–225(1)(h) states:
   The [Virginia Alcoholic Beverage Control] Board may suspend or revoke any license ... if it has reasonable cause to believe that:
   (1) The licensee ...: (h) Has allowed noisy, lewd or disorderly conduct upon the licensed premises, or has maintained such premises in an unsanitary condition, or allowed such premises to become a meeting place or rendezvous for persons of ill repute, or has allowed any form of illegal gambling to take place upon such premises[.]
   The Virginia Alcoholic Beverage Control Board defines "lewd or disorderly conduct" in 3 Va. Admin. Code § 5–50–140 as, *inter alia:*
   While not limited thereto, the board shall consider the following conduct upon any licensed premises to constitute lewd or disorderly conduct:
   1. The real or simulated display of any portion of the genitals, pubic hair or buttocks, or any portion of the breast below the top of the areola, by any employee, or by any other person; except that when entertainers are on a platform or stage and reasonably separated from the patrons of the establishment, they shall be in conformity with subdivision 2;
   2. The real or simulated display of any portion of the genitals, pubic hair or anus by an entertainer, or any portion of the areola of the breast of a female entertainer. When not on a platform or stage and reasonably separate from the patrons of the establishment, entertainers shall be in conformity with subdivision 1.

ter a hearing, the VABC Board sustained the charges and suspended Colonial First's license to sell beer at Gold City for thirty days and fined it $1,000.00. That decision was not appealed.

In April 2002, the VABC Board again cited Colonial First for allowing lewd and disorderly conduct at Gold City, and again the offending conduct was the performance of lap dances. A hearing was held on those charges, and, on June 28, 2002, the VABC hearing officer found that the conduct alleged, in fact, had occurred, ordered the suspension of Colonial First's license to sell alcohol at Gold City for 60 days, and levied a $2,500.00 fine. Colonial First appealed the hearing officer's decision to the VABC Board, which, on October 16, 2002, affirmed the hearing officer's decision. Gold City has sought judicial review of that decision in the Virginia courts.

## C. The County Amends Its Public Nudity And Adult Business Permit Ordinances

In March 2002, the County amended its Public Nudity Ordinance. Specifically, the County added language to the Public Nudity Ordinance clarifying that public nudity at establishments such as Gold City would not fall within the protective ambit of § 13–107(c), which allows public nudity in certain places.[5] The amendment also removed the public breast feeding of infants from its proscriptive reach. At the same time, the County significantly strengthened its permitting requirements for adult businesses after making findings concerning the numerous negative secondary effects associated with adult businesses. Those findings are relevant here only because they were incorporated into the resolution amending the Public Nudity Ordinance.

## D. The Present Federal Action

This action raises several challenges to the constitutionality of the Public Nudity Ordinance and the VABC regulation. Originally, the Plaintiffs alleged the following:

(1) that the Public Nudity Ordinance violates the First Amendment of the Constitution in that it is (a) either a content-based or content-neutral infringement on freedom of expression, and/or (b) overbroad;

(2) that in enacting the Public Nudity Ordinance, Henrico County exceeded its authority to act under Virginia law;

(3) that VABC's regulation defining "lewd or disorderly" conduct violates the First Amendment in that it is an invalid content-based infringement on freedom of expression, and/or overbroad.[6]

To remedy these alleged violations, Plaintiffs sought three forms of equitable relief. First, they asked for a declaration that the Public Nudity Ordinance and the VABC regulations prohibiting lap dancing on licensed premises were unconstitution-

---

5. The amendment adds the following after the last word in unamended Henrico County Code § 13–107(c):

    ... as differentiated from commercial or business advertising, promotion or exploitation of nudity for the purpose of advertising, promoting, selling or serving products or services or otherwise advancing the economic welfare of a commercial or business enterprise, such as a hotel, motel, bar, nightclub, restaurant, tavern, or dance hall.

    (d) No person shall be in violation of this section for breast feeding a child in any public place or any place where others are present.

6. Because the Plaintiffs have abandoned their attack on the Adult Business License Ordinance, no reference is made to those aspects of the original Complaint or the Amended Complaint.

al, both facially and as applied. Second, the Plaintiffs asked for a declaration that the County had no authority under Virginia law to enact its Public Nudity Ordinance. Finally, the Plaintiffs asked the Court to enjoin the County from further enforcing the Public Nudity Ordinance and the VABC from enforcing its regulatory ban on lap-dancing at licensed establishments.

The Plaintiffs also moved for preliminary injunctive relief, on the same grounds. On September 17, 2002, the Plaintiff's motion for preliminary injunction was denied and some of the Plaintiffs' claims were dismissed. Specifically, the Court held that the *Rooker–Feldman* doctrine barred the claims of Colonial First and Donna White against the VABC Board.[7] *See* Sept. 17, 2002 Tr. at 42–47. In addition, the claims of Linda Peterson against the VABC Board were dismissed by virtue of Eleventh Amendment sovereign immunity. However, Peterson was granted leave to amend her claim to name the proper party, Danielsen.

On September 24, 2002, the Plaintiffs filed an Amended Complaint[8] that not only cured the defects that the Court identified on September 17, 2002, but also refined the various claims for relief. As a result, the Plaintiffs now allege that, in addition to the previously alleged infirmities, the Public Nudity Ordinance is void for vagueness.

The County and Danielsen again have filed motions to dismiss this action as presented in the Amended Complaint. The County bases its motion to dismiss on the *Younger* abstention doctrine, arguing that, in light of the pending state criminal case

against Donna White for violating the unamended Public Nudity Ordinance, interests of comity and federalism require this Court to abstain. Danielsen has filed two motions to dismiss, the first challenging Linda Peterson's standing to contest the VABC regulation, and the second urging abstention under the Younger, *Pullman,* or *Burford* abstention doctrines.

## DISCUSSION OF AUTHORITY

### A. The County's Motion To Abstain Under *Younger v. Harris*

Invoking the doctrine of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the County urges the Court to abstain from deciding any of the Plaintiffs' claims respecting the Public Nudity Ordinance because all of those issues are pending in Donna White's ongoing appeal of her prosecution under the predecessor of that ordinance. The *Younger* doctrine requires the movant to satisfy three elements. *See Colonial First I,* 166 F.Supp.2d at 1075. First, a state proceeding must be pending either against the federal plaintiffs or against a party with whose interests the federal plaintiffs' interests are intertwined. Second, there must be an important state interest behind the challenged law. Finally, the movant must prove that there is an adequate opportunity for vindication of the federal constitutional claims in the state court proceeding.

In *Colonial First I,* the Court abstained from considering Colonial First's challenge to the Public Nudity Ordinance before it was amended. Abstention there was predicated on the pending state court criminal proceedings against Donna White and oth-

---

7. *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923).

8. Donna White is not a named plaintiff in the Amended Complaint.

er Colonial First employees for violations of the Public Nudity Ordinance. Even though the plaintiffs in that federal action were not themselves subject to the state criminal prosecutions, abstention was appropriate because of the "close relationship of the parties and the alignment of the parties' interests." *Colonial First I,* 166 F.Supp.2d at 1078.

The present action is similar to *Colonial First I* in that the remaining Plaintiffs here, Colonial First and Peterson, raise substantially the same challenges to the Public Nudity Ordinance as were presented in *Colonial First I* and in the still-pending appeal of Donna White. Also, like the plaintiffs in *Colonial First I,* the Plaintiffs here share a close relationship, and alignment of interests, with Donna White, who is no longer a plaintiff in this action. Notwithstanding these similarities, the present action differs from the former one because the County has amended its Public Nudity Ordinance. Hence, in this action, Colonial First and Peterson challenge a different ordinance from the one that Donna White now challenges in the Virginia Court of Appeals.

The Plaintiffs argue that the amendment to the Public Nudity Ordinance renders the proceeding against Donna White insufficient to satisfy the "pending state proceeding" element of the *Younger* doctrine. In advancing this argument, the Plaintiffs rely heavily on this Court's earlier holding that the amended ordinance was sufficiently different from the original ordinance so that the *Rooker–Feldman* doctrine did not foreclose jurisdiction in this action. The Plaintiffs' argument, therefore, presents not only the question whether the first element of the *Younger* doctrine requires that the statute challenged in the federal proceeding be identical to the one in the state proceeding, but also whether a court can find the first element of *Younger* satis-

fied even where it has found an amendment to a statute to be sufficient to preclude application of the *Rooker–Feldman* doctrine.

A comparison of the policies that underlie the *Younger* doctrine with those that are the foundation for the *Rooker–Feldman* doctrine is useful in understanding why the amendment of the ordinance has different consequences under each doctrine. To begin, it is necessary to remember that the *Younger* doctrine presupposes the existence of subject matter jurisdiction but counsels against its exercise in deference to an important state interest, while the *Rooker–Feldman* doctrine operates because of a lack of federal jurisdiction.

*Younger* and its progeny generally require a federal court to abstain from exercising jurisdiction where the federal plaintiffs are involved in an ongoing state proceeding that implicates important state interests where there is an adequate opportunity in the state proceeding to raise the federal constitutional claims asserted in the federal action. Although the Supreme Court cast its decision in *Younger* partly in terms of the appropriate limitations on a federal court's equity jurisdiction, *Younger* now stands for a much broader principle of comity, which requires federal courts to abstain where the otherwise valid exercise of federal jurisdiction would interfere with state judicial proceedings concerning important state interests. *See Colonial First I,* 166 F.Supp.2d at 1075 (citing *Hawaii Housing Auth. v. Midkiff,* 467 U.S. 229, 237–38, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984)). As the Supreme Court explained in *Younger,* comity means "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the

States and their institutions are left free to perform their separate functions in their separate ways." 401 U.S. at 44, 91 S.Ct. 746. That end is achieved, under certain limited circumstances, by having federal courts stay their hand, *i.e.,* refrain from exercising jurisdiction, to allow state courts to conclude litigation begun before the federal court acquired jurisdiction, even where the state case involves federal constitutional claims that otherwise are properly within the federal court's jurisdiction.

By contrast, the Rooker–*Feldman* doctrine, as a matter of federal constitutional law, operates to divest inferior federal courts of jurisdiction over cases which would require a review by such a court of a state court judgment or a decision on issues that are inextricably intertwined with those decided by a state court. The Rooker–*Feldman* doctrine proceeds from the constitutional command that only the Supreme Court of the United States may review judgments of the state courts. *See Feldman,* 460 U.S. at 476, 103 S.Ct. 1303; *Rooker* 263 U.S. at 415, 416, 44 S.Ct. 149. The doctrine exists to prevent the lower federal courts from reviewing the decisions of the state courts as de facto appellate courts, and functions much like the doctrines of claim and issue preclusion. Stated differently, the Rooker–*Feldman* doctrine prevents aggrieved parties from collaterally attacking state court judgments in the lower federal courts. Judge Easterbrook explained the Rooker–*Feldman* inquiry quite well in *GASH Assocs. v. Village of Rosemont,* 995 F.2d 726, 728 (7th Cir.1993): "The Rooker–*Feldman* doctrine asks: is the federal plaintiff seeking to set aside a state judgment, or does he present some independent claim, *albeit*

*one that denies a legal conclusion that a state court has reached in a case to which he was a party?*" (emphasis added). As this articulation of the doctrine makes clear, the dominant concern underlying Rooker–*Feldman* is the problem of collateral attack on state court judgments, rather than the prospect of interference in state court adjudication.

Viewed in this perspective, application of the *Rooker–Feldman* doctrine in this action illustrates its difference from *Younger* abstention. First, in the decision rendered in this action on September 17, the Court held that the *Rooker–Feldman* doctrine did not apply at all to Linda Peterson and Colonial First because, notwithstanding their identity of interests with Donna White, they simply were not parties to the state court proceedings. *See* September 17, 2002 Tr. at 42–45. Because they were not parties to the state court proceeding, their federal action could not be characterized as an attempt to seek review of the state court decision in a lower federal court. Second, the identity of interest concept that is part of the *Younger* doctrine simply is not a part of the *Rooker–Feldman* doctrine. *See Gross v. Weingarten,* 217 F.3d 208, 218 n. 6 (4th Cir.2000) (*citing Johnson v. DeGrandy,* 512 U.S. 997, 1005–06, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994)).

Furthermore, in this action, the attack on the amended Public Nudity Ordinance is a claim different than,[9] albeit closely related to, the claim decided by the state trial court whose decision addressed the ordinance before it was amended. The *Rooker–Feldman* doctrine permits that to occur because it focuses on whether the federal plaintiff is seeking review of a state court decision by an inferior federal court, a constitutionally prohibited activity, not

---

**9.** As explained above, the amended ordinance differs from the original only insofar as it clarifies which displays of public nudity fall

within the exception to the general prohibition. The amendment did not alter at all the ordinance's general prohibition.

on whether the constitutionally permissible federal assessment of a state law might interfere in ongoing state proceedings presenting the same federal constitutional issue. *See GASH*, 995 F.2d at 728. In summary, the *Rooker–Feldman* did not apply even though any judgment of this Court on the Public Nudity Ordinance would almost certainly interfere with the on-going state court appeal.

Instead, that interference is foreclosed by the principles of comity and federalism that animate *Younger* abstention. As the Supreme Court explained in *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982), "*Younger v. Harris* and its progeny espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." (internal citation omitted). Any decision by this Court respecting the constitutionality of the amended Public Nudity Ordinance, of necessity, will address issues that are now before the Virginia Court of Appeals in Donna White's appeal, *even though* that appeal involves the original Public Nudity Ordinance. That is because the gravamen of the attack on the amended ordinance in this action is the same as the attack on the original ordinance in the Virginia Court of Appeals. Accordingly, the same principles supporting the decision in *Colonial First I* support abstention here. Given the substantial identity of interests of the parties and the similarity of the constitutional attacks on the two ordinances, a decision in this action will interfere with the pending state proceeding.[10] Furthermore, for the same reasons identified in *Colonial First I*, the pending state proceeding implicates important state interests.

Finally, the defendant in that proceeding has the opportunity to raise the federal claims there. *See* 166 F.Supp.2d at 1080–83. The Plaintiffs rightly argue that their federal constitutional claims received short shrift in the state trial court. Also, they rightly point out that, as the Commonwealth's Attorney admitted on the record in *Colonial First I*, the Public Nudity Ordinance prohibits the wearing of attire (dresses, tops and bathing suits) that are commonly worn in public in the County.[11] And, as shown by the statements of the Commonwealth's Attorney on the record in *Colonial First I*, what will, or will not, result in prosecution rests entirely in the subjective discretion of the Commonwealth's Attorney.

As the Plaintiffs correctly point out, these facts point to very serious constitu-

---

**10.** The holding respecting interference in *Colonial First I* is just as apt here:

> [I]f this Court were to declare the Ordinance unconstitutional and, thereupon, were to grant the other prospective relief requested, the Court would provide the state criminal defendants a significant defense to their prosecutions. Indeed, the defendants in the state proceedings certainly would urge this Court's decision as *res judicata* as to the Ordinance's deficiencies under the Constitution of the United States. "At the very least, [such a judgment's] practical effect [would be] to raise the specter of a federal pre-judgment" that the Ordinance, as applied to the similarly situated state court defendants, is unconstitutional. *Cine-*

*ma Blue of Charlotte, Inc. v. Gilchrist*, 887 F.2d 49, 53 (4th Cir.1989). Given the clear and strong nexus between the Plaintiffs in this action and the state court defendants as well as the virtual identity of interests that they share, the state court could not make a decision respecting constitutional defenses to this Ordinance *tabula rasa*. 166 F.Supp.2d at 1080.

**11.** Indeed, the slightly revealing, but rather modest, top worn by Shania Twain in the December 9, 2002 issue of *Time Magazine* would violate the Public Nudity Ordinance because a small part of the bottom of one breast is revealed through a small cut in the cloth of the top that she is wearing.

tional issues that, to date, have been largely ignored by the state court; but the Plaintiffs are in error in urging that the lack of attention given these significant questions to date in the state court is a justification for a federal court to disregard the precepts of *Younger* and to decide the federal constitutional issues. That is because the right to present a constitutional issue in the state forum, within the meaning of *Younger*, does not equate with an assurance that those issues will be fully addressed or rightly decided. Rather, it means that there is a right to a fair hearing on the issues. Conceptually, there might arise a situation in which the state courts so consistently ignore the federal constitutional issues presented to them that there is, in reality, no opportunity for adjudication within the meaning of *Younger*. In that event, the principles of comity that animate *Younger* abstention might have to yield to federal court intervention. That circumstance is not presented as this matter presently stands.

Finding the elements of *Younger* to be satisfied, the Court abstains from considering the Plaintiffs' claims against Henrico County respecting the Public Nudity Ordinance.

**B. Danielsen's Motions to Dismiss**

**1. Peterson's Standing to Challenge the VABC Board Regulation**

Article III of the Constitution requires that federal courts only adjudicate "cases" and "controversies." To qualify as a case or controversy, a matter must be "of the sort traditionally amenable to, and resolved by, the judicial process." *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 102, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). A plaintiff's "standing to sue" is a defining characteristic of cases and controversies amenable to judicial resolution. By requiring a showing of standing, feder-

al courts ensure that a plaintiff has a "sufficient personal stake in a dispute to render judicial resolution appropriate." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.,* 204 F.3d 149, 153 (4th Cir.2000). The standing requirement " 'tends to assure that the legal questions presented to the court will be resolved, not in the rarefied atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action.' " *Id.* at 153–54 (quoting *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)).

To satisfy the "irreducible constitutional minimum of standing," *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), a plaintiff must have suffered an injury in fact that is both " 'fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.' " *Gaston Copper,* 204 F.3d at 154 (quoting *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)). This formulation contains three elements: (1) injury, (2) traceability, and (3) redressability. *See id.*

To satisfy the injury-in-fact element, a plaintiff must show "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Defenders of Wildlife,* 504 U.S. at 560, 112 S.Ct. 2130 (internal quotation marks omitted). Traceability requires a plaintiff to show that the actual or threatened injury is likely the result of the defendant's conduct, and not the result of the independent action of a third party not before the court. *Defenders of Wildlife,* 504 U.S. at 560, 112 S.Ct. 2130. Redressability requires a plaintiff to show that it is likely, rather

than merely speculative, that a favorable decision will redress the injury. *Id.*

Even where a plaintiff satisfies the constitutional minima of standing, certain prudential limitations might nonetheless counsel against judicial review. The Fourth Circuit summarized these prudential limitations in *Burke v. City of Charleston,* 139 F.3d 401, 405 (4th Cir.1998):

> [First], a plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties. Moreover, even when a plaintiff satisfies the constitutional requirements for standing, federal courts will not adjudicate a generalized grievance shared in substantially equal measure by all or a large class of citizens. Finally, the plaintiff's complaint must fall within the zone of interests the statute or Constitution protects or regulates.

(internal citations and quotations marks omitted).

Danielsen's attack on Peterson's standing to sue is a "facial" one that is made under Fed.R.Civ.P. 12(b)(1). As explained in *Walker v. United States Dep't of the Army,* 60 F.Supp.2d 553, 555 (E.D.Va. 1999), a defendant may present a motion to dismiss under Rule 12(b)(1) in one of two ways. First, the defendant may attack the complaint on its face and argue that it fails to allege facts sufficient to support subject matter jurisdiction. Second, the defendant may challenge the facts that allegedly confer standing apart from the pleadings. In the case of a facial attack, like the one that Danielsen raises here, the Court assumes all of the alleged facts to be true. *See id.*

The core of Danielsen's standing argument seems to be that, even if Peterson proves all allegations pertinent to her claim, she will not suffer an injury-in-fact. Furthermore, Danielsen argues that, even if Peterson can be said to have suffered some injury, she actually is asserting the rights of Colonial First and, therefore, she lacks standing because of the prudential rule that "normally bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves." *Warth v. Seldin,* 422 U.S. 490, 509, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

Danielsen's argument that Peterson fails to allege an injury-in-fact rests upon an unduly constricted reading of the First Amended Complaint where, in paragraph 6, Peterson states that she "desires to offer nude or semi-nude dance performances in Henrico County." Danielsen correctly notes that Peterson does not allege explicitly that she desires to engage in that conduct at Gold City, but erroneously contends that this omission is fatal to her standing. That argument simply overlooks the allegations of paragraphs 88–91 wherein Peterson asserts that lap dancing is a protected mode of expression; that the VABC Board's regulation banning that activity is unconstitutional; and that, if the regulation is not declared unconstitutional, she will be unable to express herself in the manner she desires. And, the argument overlooks the allegation that Gold City is that only operation of its type in the County.

■ The fact that Peterson does not state explicitly that she desires to perform lap-dances at Gold City is not fatal to her standing because, taken together, her allegations clearly mean that Peterson wishes to lap dance at Gold City and they describe a personal deprivation of her asserted First Amendment right. For that reason, and because, in considering a facial challenge to standing, the Court must "presum[e] that general allegations embrace those specific facts that are neces-

sary to support the claim," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990), Peterson's allegations satisfy the constitutional standing requirements.

■ Danielsen further argues that, even if Peterson has satisfied the constitutional minima for standing, the prudential standing rule that the Supreme Court articulated in *Warth v. Seldin* should apply because the VABC Board regulation, by its own terms, applies only to licensed establishments, not to its employees. *See* 422 U.S. at 509, 95 S.Ct. 2197. In *Warth*, the Supreme Court found that the citizens of Rochester, New York lacked standing to challenge the allegedly discriminatory and exclusionary zoning practices of neighboring Penfield, New York, even though the citizens of Rochester adequately alleged an injury-in-fact. The gravaman of the complaint was that the city's zoning ordinance and practices effectively had excluded citizens of low and moderate income from the municipality. The Court denied standing to plaintiffs who were citizens in neighboring Rochester because "the [citizens of Rochester] are not themselves subject to Penfield's zoning practices. Nor do they allege that the challenged zoning ordinance and practices preclude or otherwise adversely affect a relationship existing between them and the persons whose rights assertedly are violated." *Id.* at 510, 95 S.Ct. 2197. The derivative economic harm to the plaintiffs, therefore, was insufficient to confer standing to challenge the suspect ordinance on the ground that the ordinance allegedly violated the constitutional and statutory rights of other persons.

Danielsen argues that *Warth* stands for the general proposition that, whenever a plaintiff challenges a law that does not apply directly to him, prudence demands that federal courts deny standing. However, as shown by the Court's subsequent decision in *Sec'y of State of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984), the *Warth* rule does not extend as far as Danielsen urges. In *Munson*, the Supreme Court invoked the *Warth* rule, but nonetheless allowed a professional fundraiser to assert the First Amendment rights of the charities it served, even though the fundraiser itself did not allege that it had suffered First Amendment injury as a result of the challenged law. *See* 467 U.S. at 958, 104 S.Ct. 2839. "The activity sought to be protected is at the heart of the business relationship between [the fundraiser] and its clients, and [the fundraiser]'s interests in challenging the statute are completely consistent with the First Amendment interests of the charities it represents." *Id.*

When considered in light of *Munson*, therefore, the rule enunciated in *Warth* is properly characterized as one that requires a district court to ensure that the plaintiff's interest in the action is consistent with the interests of those whose rights he asserts. While the plaintiffs in *Warth* could not assert the anti-discrimination rights of third parties because their interest was purely economic, the fundraiser in *Munson* could assert the First Amendment rights of third parties because it shared a completely consistent interest in the protection of First Amendment freedoms.

Because, as in *Munson*, Peterson shares an identity of interest with Colonial First, she has standing to challenge the VABC Board's regulation, notwithstanding the fact that the regulation, by its own terms, applies only to licensed establishments. Accordingly, the *Warth* rule does not apply here.

## 2. Younger Abstention

In the alternative, Danielsen argues that the Court should abstain under the *Youn-*

*ger* doctrine because the same issues presented here respecting the constitutionality of the VABC Board regulations are currently before the Virginia courts in Colonial First's appeal of the VABC Board's suspension order of October 16, 2002. As discussed above, *Younger* abstention is appropriate when the party seeking abstention proves three elements: (1) that a state proceeding is pending either against the federal plaintiff, or a party with whose interests the plaintiffs' interests are intertwined; (2) that the law being challenged implicates important state interests; and (3) that there is an adequate opportunity to raise the federal claims in the state proceeding. *See Colonial First I,* 166 F.Supp.2d at 1075.

■ The fact that the VABC Board proceeding did not originate as a criminal prosecution in a court of law is no barrier to application of the *Younger* doctrine because *Younger* abstention applies not only where the pending state matter is a criminal proceeding, but also where the pending state matter is an administrative proceeding that is judicial in nature. The Supreme Court has held that the concerns for comity and federalism counsel abstention where the state matter is an "administrative proceeding in which important state interests are vindicated, so long as in the course of those proceedings the federal plaintiff would have a full and fair opportunity to litigate his constitutional claim." *Ohio Civil Rights Comm'n v. Dayton Christian Schools,* 477 U.S. 619, 627, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986); *see also Middlesex County,* 457 U.S. at 432–34, 102 S.Ct. 2515 (holding that federal courts should refrain from enjoining state bar disciplinary proceedings initiated by state ethics committees where the proceedings are within the appellate jurisdiction of the state Supreme Court).

The Fourth Circuit has noted that, in deciding whether abstention is appropriate in the face of state administrative proceedings, the critical question is whether those proceedings are "judicial in nature." *See Employers Res. Mgmt. Co. v. Shannon,* 65 F.3d 1126, 1135 n. 7 (4th Cir.1995); *Martin Marietta Corp. v. Maryland Comm'n on Human Relations,* 38 F.3d 1392, 1396 (4th Cir.1994); *Telco Communications, Inc. v. Carbaugh,* 885 F.2d 1225, 1228 (4th Cir.1989). In *Telco Communications,* the Fourth Circuit explained that "[a]dministrative proceedings are not judicial in nature ... if state law expressly indicates that the proceeding is not a judicial proceeding or part of one ... or if the proceeding lacks trial-like trappings." 885 F.2d at 1228. The Court of Appeals, in *Telco Communications,* went on to find abstention inappropriate because the administrative action was an "informal fact-finding conference" and not a formal hearing as defined by state law. *See id.*

The proceedings originally before the VABC Board, and now before the Virginia courts, respecting the suspension of Gold City's license to sell alcoholic beverages, are sufficiently judicial in character to fall within the purview of *Younger.* For example, the Code of Virginia requires that, before the Virginia Alcoholic Beverage Control board suspend any license, it must conduct a formal, quasi-judicial proceeding in accordance with Virginia's Administrative Process Act. *See* Code of Virginia § 4.1–227. In those adversary proceedings, the licensee is entitled to representation by counsel and has the right to cross-examine witnesses. The presiding hearing officer takes evidence, makes findings of fact based on that evidence, and recommends a course of action to the VABC Board. *See* 3 Va. Admin. Code § 5–10–70; Code of Virginia § 9–6.14:12(C). A licensee may appeal any adverse decision by a hearing officer to the VABC Board.

See 3 Va. Admin.Code § 5–10–240. Furthermore, neither the Administrative Process Act nor the administrative regulations governing these hearings precludes a licensee from challenging the constitutionality of the operative regulations under federal law, and the licensee has the opportunity to exercise the right of judicial review in the Virginia courts. See Code of Virginia §§ 2.2–4026 and 4.1–227; Rules of Virginia Supreme Court 2A:1–5. For the foregoing reasons, the VABC Board proceedings are judicial in nature.

■ Having determined that VABC's administrative review process is sufficiently judicial in character to call the Younger doctrine into play, the next question is whether the relationship between Peterson and Colonial First satisfies the so-called derivative abstention doctrine described briefly above, and at length in Colonial First I, 166 F.Supp.2d at 1076–80. Under the derivative abstention doctrine, Younger abstention may be appropriate in cases where the plaintiff in the federal proceeding is not a party to the state proceeding, so long as there is a sufficient nexus between the federal plaintiff and those named as defendants in the pending state court proceeding.

■ Because Peterson's interest in challenging the VABC Board regulation is sufficiently intertwined with that of Colonial First, Danielsen asserts, that derivative abstention is appropriate. As just discussed in the context of standing, Peterson's interest in challenging the VABC Board's regulation is almost identical to that of Colonial First. Peterson is employed by Colonial First, and she asserts the same First Amendment claims that Colonial First would raise here if it could. Accordingly, a "sufficient nexus" between

Peterson and Colonial First exists to warrant derivative abstention in light of the proceedings in the Virginia courts. See Colonial First I, 166 F.Supp.2d at 1078.

The other two prerequisites for the application of Younger are likewise satisfied. Danielsen has shown that the Commonwealth's interest in regulating the distribution of alcohol is an important state interest supporting the VABC Board's regulation. Likewise, the Commonwealth has a strong interest in adjudicating within the system set up by state law, the alleged violations of the regulation. Peterson does not dispute that point. As discussed above, there is no impediment to presenting the constitutional challenge to the regulation to the VABC Board or the Virginia courts. In fact, the hearing officer's decision indicates that the hearing officer actually entertained Colonial First's constitutionality arguments. See Exhibit 6 to First Amended Compl. at 8–9.

For the foregoing reasons, the conditions for abstention under Younger have been satisfied. Accordingly, the Court will abstain from considering Peterson's challenge to the VABC Board's regulation.[12]

## CONCLUSION

For the foregoing reasons, the Court will abstain from considering the claims of Colonial First and Linda Peterson challenging the constitutionality of Henrico County's amended Public Nudity Ordinance under the Younger doctrine. Although Linda Peterson has standing to challenge the VABC Board's regulation at issue here, under the Younger doctrine, the Court also will abstain from considering Peterson's challenge to the regulation.

---

**12.** In light of the holding respecting Younger abstention, it is unnecessary to consider Danielsen's arguments for Burford or Pullman abstention.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.

### ORDER

For the reasons set forth in the accompanying Memorandum Opinion, it is hereby ORDERED that:

(1) the Motion to Abstain filed by Henrico County, Virginia is granted;

(2) the Motion to Dismiss filed by Vernon M. Danielsen is denied;

(3) the Motion to Abstain filed by Vernon M. Danielsen is granted; and

(4) this action is stayed pending resolution of the state proceedings and counsel shall inform the Court when that occurs.

The Clerk is directed to send a copy of this Order to all counsel of record.

It is so ORDERED.