In re Elizabeth J. COWDEN a/k/a Elizabeth Ciaffoni Cowden a/k/a Elizabeth Ciaffoni, Debtor.

Gary L. Smith, Trustee, Plaintiff,

v.

Elizabeth J. Cowden a/k/a Elizabeth Ciaffoni Cowden a/k/a Elizabeth Ciaffoni and Robert A. Cowden, Sr., Defendants.

Bankruptcy No. 03–20637–MBM. Adversary No. 05–2693–MBM.

United States Bankruptcy Court, W.D. Pennsylvania.

Jan. 30, 2006.

Joseph E. Schmitt, George T. Snyder, Pittsburgh, PA, for trustee.

Robert O. Lampl, John P. Lacher, Pittsburgh, PA, for Elizabeth Cowden.

Charles J. Avalli, Pittsburgh, PA, for Robert A. Cowden, Sr.

### MEMORANDUM OPINION

M. BRUCE McCULLOUGH,
Bankruptcy Judge.

**AND NOW**, this **30th day** of **January, 2006**, upon consideration of (a) the adversary complaint filed by Gary L. Smith, the Chapter 7 Trustee in the above-captioned bankruptcy case (hereafter "the Trustee"), wherein the Trustee seeks to avoid as fraudulent several pre-petition transfers of property effected by Elizabeth J. Cowden, the instant debtor (hereafter "the Debtor"), to herself and her husband, Robert A. Cowden, Sr., as tenants by the entirety (hereafter "the Defendants"), (b) the Defendants' motion to dismiss the Trustee's aforementioned complaint, and (c) the Trustee's response to the Defendants' motion to dismiss, as well as the parties'

respective memorandums of law in support of their respective positions;

and after notice and a hearing on the Defendants' motion to dismiss held on September 22, 2005,

it is **hereby determined that the Court shall issue an order** that the Defendants' motion to dismiss the Trustee's complaint is **DENIED WITH PREJUDICE.**

The rationale for the Court's decision is set forth below.

### I.

As an initial matter, the Court notes that the Trustee seeks to avoid as fraudulent the conveyances in question (hereafter "the Conveyances") pursuant to 11 U.S.C. § 544(b)(1) and several provisions of Pennsylvania's Fraudulent Transfer Act, namely 12 Pa.C.S.A. §§ 5104(a)(1), 5104(a)(2)(ii), and 5105.

The Defendants move to dismiss the Trustee's complaint on several grounds, namely that his fraudulent conveyance action set forth therein is barred (a) because of the passage of the applicable statute of limitations, (b) by virtue of *res judicata,* collateral estoppel, and the Rooker–Feldman doctrine, and (c) by virtue of some amorphous doctrine of "finality."

■■■ The Court shall address below each of the foregoing grounds for dismissal raised by the Defendants except the aforesaid ground of finality, for which ground the Court summarily rules against the Defendants—i.e., the Court rules outright

that the Defendants' dismissal motion may not be granted on the basis of such ground—given that the Defendants fail, in either their dismissal motion or their memorandum of law in support thereof, to define such doctrine, let alone to plead the precise contours of their position predicated upon the same.

### II.

Pertinent to a consideration of the statute of limitations ground advanced by the Defendants are the following undisputed facts:

(1) The Debtor commenced the instant bankruptcy case on January 17, 2003, as one in Chapter 11;

(2) The Debtor converted the instant case from one in Chapter 11 to a Chapter 7 case on November 29, 2004, and the Trustee was appointed on November 29, 2004;

(3) The Trustee initiated the instant adversary proceeding by filing his adversary complaint on June 20, 2005;

(4) Certain of the Conveyances were of realty that had earlier been specifically devised to the Debtor by a will of her father, who died in 1974 (hereafter "the Father's Realty");

(5) The remainder of the Conveyances were of realty that had earlier been specifically devised to the Debtor by a will of her mother, who died in 1992 (hereafter "the Mother's Realty");[1]

---

**1.** The Court is somewhat uncertain whether the Conveyances which the Trustee seeks to avoid on the ground that they constitute fraudulent transfers also include unrecorded assignments on August 25, 1999, by the Debtor to herself and her husband of residuary interests that she possessed in both her deceased mother's and deceased father's wills. Such uncertainty exists because the Trustee describes and discusses at length such assign-

ments in both his complaint and his memorandum of law in opposition to the Defendants' dismissal motion, yet the Trustee fails, in either his relief request within his complaint or his proposed order attached to such complaint, to request as relief that such residuary interest assignments be avoided as fraudulent transfers. Because of such uncertainty the Court shall deal with the various facets of the Defendants' dismissal motion vis-

(6) Deeds dated August 25, 1999, and August 31, 1999, evidencing the Conveyances of the Mother's Realty from the Debtor to herself and her husband were recorded on August 25, 1999, and August 31, 1999;

(7) Shortly prior to the Conveyances of the Mother's Realty set forth in paragraph (6), such realty was distributed by deed to the Debtor from the estate of her deceased mother—in particular, such distributions occurred by deeds dated August 24, 1999, and August 27, 1999;

(8) Deeds dated December 28, 1999, evidencing the Conveyances of the Father's Realty from the Debtor to herself and her husband were recorded on January 7, 2000;

(9) As of the commencement of the instant bankruptcy case on January 17, 2003, none of the Father's Realty had been distributed to the Debtor from the estate of her deceased father; and

(10) Prior to the recording dates just set forth in paragraphs (6) and (8), no document was recorded that evidences any particular one, all, or some portion of the Conveyances—therefore, all of the documents that were recorded and which evidence the Conveyances were recorded on or after August 25, 1999.

Also relevant to the Defendants' statute of limitations defense is the Defendants' allegation that the Debtor assigned to herself and her husband all of her interest in the Mother's Realty and the Father's Realty at some point in 1993; thus, the Defendants apparently allege that all of the Conveyances actually occurred in 1993 rather than in 1999 or 2000. The Trustee challenges that such assignment in 1993 actually occurred, and the Defendants have yet to even allege whether such assignment was oral, on the one hand, or was memorialized in a writing, on the other hand.

■ As an initial matter, the Court holds—and the Court does not understand the Defendants to seriously, if at all, challenge—that the Trustee's fraudulent conveyance action, brought as it is under 11 U.S.C. § 544(b)(1) (and Pennsylvania's Fraudulent Transfer Act), is not time-barred by virtue of the application of 11 U.S.C. § 546(a). The Court so holds because the Trustee's § 544(b)(1) action was brought before November 29, 2005, that is within one year after the Trustee's appointment, which date is also (a) later than two years after the order for relief was entered in the instant bankruptcy case (i.e., 2 yrs. after January 17, 2003, equals January 17, 2005), and (b) earlier than the time the instant case was closed, given that it has yet to be closed.

■ As for whether the Trustee's fraudulent conveyance action is time-barred by virtue of the application of the statute of limitations set forth in Pennsylvania's Fraudulent Transfer Act,[2] the Court holds the following:

(a) such action must have been brought within four years after the transfers sought to be avoided—i.e., the Conveyances—were made, *see* 12 Pa. C.S.A. § 5109 (Purdon's 2005); and

---

a-vis the Debtor's residuary interest assignments in the margin to the instant opinion.

**2.** By bringing his fraudulent conveyance action under § 544(b)(1), the Trustee may avoid transfers that could be avoided under applicable nonbankruptcy law such as, for instance, Pennsylvania's Fraudulent Transfer Act, provided, *inter alia,* and of course, that the statute of limitations for such other law is satisfied.

(b) such four year limitations period, however, is deemed not to have elapsed PROVIDED that (i) more than four years did not elapse between the date that such transfers were made and January 17, 2003, which date is when the instant bankruptcy case was commenced, and (ii) the Trustee's fraudulent conveyance action was instituted before the limitations period set forth in 11 U.S.C. § 546(a) had passed, *see In re Mi-Lor Corp.*, 233 B.R. 608, 618–619 (Bankr.D.Mass.1999); *In re Spatz*, 222 B.R. 157, 164–165 (N.D.Ill.1998); *In re Florida West Gateway, Inc.*, 182 B.R. 595, 598 (Bankr.S.D.Fla. 1995); *In re Martin*, 142 B.R. 260, 265–266 (Bankr.N.D.Ill.1992); *In re Dry Wall Supply, Inc.*, 111 B.R. 933, 935–937 (D.Colo.1990).

Because, as set forth above, the Trustee instituted his fraudulent conveyance action before the limitations period set forth in 11 U.S.C. § 546(a) had passed, § 5109's four-year statute of limitations is deemed not to have passed if more than four years did not elapse between the date that the Conveyances were made and January 17, 2003. Thus, did more than four years pass between the date that the Conveyances were made and January 17, 2003?

■ The Defendants argue that much more than four years passed between the date that all of the Conveyances were made and January 17, 2003, because, as set forth above, the Defendants allege that such transfers actually occurred in 1993, or practically almost ten years prior to January 17, 2003. The Trustee, on the other hand, disagrees, arguing instead that, even if *arguendo* such transfers actually occurred in 1993,[3] such transfers neverthe-

less did not occur for purposes of Pennsylvania's Fraudulent Transfer Act (hereafter "the PFTA") and § 5109 until August 25, 1999, August 31, 1999, and January 7, 2000, which dates are (a) when, as set forth above, deeds were first recorded that evidence such transfers, and (b) all well within four years of January 17, 2003.

As support for the Trustee's position that the Conveyances occurred, in any event, on August 25, 1999, August 31, 1999, and January 7, 2000, for purposes of the PFTA and § 5109, the Trustee relies on the combined application of several Pennsylvania statutory provisions. First, the Trustee relies on 12 Pa.C.S.A. § 5106(1)(i), which provides, in pertinent part, that:

> For the purposes of this chapter [ (i.e., Pennsylvania's Fraudulent Transfer Act and, in particular, § 5109 thereof) ]:
>
> (1) A transfer is made:
>
> (i) with respect to an asset that is real property other than a fixture, ... when the transfer is so far perfected that a good faith purchaser of the asset from the debtor against whom applicable law permits the transfer to be perfected cannot acquire an interest in the asset that is superior to the interest of the transferee.

12 Pa.C.S.A. § 5106(1)(i) (Purdon's 2005). Second, the Trustee relies on 21 P.S. § 351, which provides, in pertinent part, that:

> All deeds, conveyances, contracts, and other instruments of writing[,] wherein it shall be the intention of the parties executing the same to grant, bargain, sell, and convey any lands, tenements, or hereditaments situate in this Commonwealth, ... which shall not be ... [prop-

---

**3.** As set forth above, the Trustee challenges that the Conveyances even actually occurred in 1993.

erly] recorded ... shall be adjudged fraudulent and void as to any subsequent bona fide purchaser or mortgagee or holder of any judgment, duly entered in the [appropriate] prothonotary's office ..., without actual or constructive notice unless such deed, conveyance, contract, or instrument of writing shall be recorded ... before the recording of the deed or conveyance or the entry of the judgment under which such subsequent purchaser, mortgagee, or judgment creditor shall claim.

21 P.S. § 351 (Purdon's 2005). Finally, the Trustee relies on 20 Pa.C.S.A. § 301(b), which provides that "[l]egal title to all real estate of a decedent shall pass at his death to his heirs or devisees, subject, however, to all the powers granted to the personal representative by this code and lawfully by the will and to all orders of the court." 20 Pa.C.S.A. § 301(b) (Purdon's 2005).

Applying § 301(b) to the instant matter, the Trustee contends that the Debtor possessed title to, and thus owned, the realty that was the subject of the Conveyances (i.e., the Mother's Realty and the Father's Realty) even back in 1993 when such realty is alleged by the Defendants to have been actually conveyed away by the Debtor. The Trustee next contends that, pursuant to § 351, not only was a transfer of such realty in 1993 perfectable, that is amenable to perfection, by recording—presuming, once again, that such transfer even actually occurred then—but also that, absent such recording (i.e., perfection), such transfer would yield in priority, that is would essentially be void as, to any subsequent bona fide purchaser who proceeded to properly record its purchase. Finally, the Trustee argues that, in light of the foregoing, any transfer of such realty that might have occurred in 1993 could not, prior to the deed recording that occurred on August 25, 1999, August 31,

1999, and January 7, 2000, have been perfected as against a good faith purchaser of such realty from the Debtor so as to preclude such purchaser from acquiring an interest in such realty that would have been superior to the interest in such realty alleged to have been acquired by the Debtor's transferees back in 1993. Therefore, argues the Trustee, it matters not if the Debtor actually made the Conveyances back in 1993 because even if she did, such transfer, pursuant to § 5106(1)(i), nevertheless could not be deemed to have occurred for purposes of the PFTA and § 5109 until, at the earliest, August 25, 1999, August 31, 1999, and January 7, 2000.

■ The Court finds to be correct, and thus adopts in full, the position of the Trustee as just recounted regarding when the Conveyances were made for purposes of the PFTA and § 5109, *see In re Marlar*, 252 B.R. 743, 758–59 (8th Cir. BAP 2000) (applying Arkansas' identically-worded counterpart to 12 Pa.C.S.A. § 5106(1)(i) and holding that realty transfer occurs for fraudulent transfer purposes when deed is recorded); *Boardwalk Regency Corp. v. Burd*, 262 N.J.Super. 162, 620 A.2d 448, 449 (1993) (same, applying New Jersey's identically-worded counterpart to 12 Pa. C.S.A. § 5106(1)(i)); *Wilder v. Miller*, 135 Idaho 382, 17 P.3d 883, 886–87 (2000) (same, applying Idaho's identically-worded counterpart to 12 Pa.C.S.A. § 5106(1)(i)). Accordingly, the Court holds that (a) the Conveyances, *for purposes of the PFTA and § 5109*, occurred on August 25, 1999, August 31, 1999, and January 7, 2000, rather than back in 1993, (b) it thus matters not whether the Conveyances *actually* occurred back in 1993, (c) less than four years elapsed between the date that the Conveyances were made and January 17, 2003, for purposes of the PFTA and § 5109, and (d) the Trustee's fraudulent

conveyance action is not time barred by § 5109's four-year statute of limitations, that is such statute of limitations is deemed not to have passed with respect to the Trustee's fraudulent conveyance action.[4] Furthermore, the Court holds as it does notwithstanding its recognition that the Defendants perhaps contend that (a) an agreement between co-administrators for the estate of the Debtor's deceased father, on the one hand, and the Defendants, on the other hand—which agreement was approved by both Bankruptcy Judge Judith Fitzgerald's February 26, 2004 court order entered in the instant bankruptcy case and a March 25, 2004 court order entered by, and in, the Orphans' Court—establishes that the Conveyances of the Father's Realty occurred in February 1993, and (b) the two court orders, because they approved such stipulation, operate, by virtue of *res judicata*, collateral estoppel, and/or application of the Rooker–Feldman doctrine, to bar the Trustee, in his fraudulent conveyance action, from disputing that such Conveyances occurred in 1993. The Court must reject such preclusion argument by the Defendants in any event because, unfortunately for the Defendants, and as also set forth in the Court's ensuing discussion below of the various preclusion doctrines, such settlement agreement says nothing regarding when such Conveyances occurred *for purposes of the PFTA (i.e., relevant fraudulent conveyance law)* even if *arguendo* such agreement deals with when such Conveyances *actually* occurred—because, for the reasons set forth above, when a transfer actually takes place is not dispositive of when the same occurs for purposes of the PFTA, the Defendants' preclusion argument, that is that the Trustee is barred by way of *res judicata*, etc. from disputing, for purposes of a fraudulent conveyance action, that the Conveyances of the Father's Realty occurred in February 1993, necessarily fails. Such preclusion argument also necessarily fails to the extent that the Defendants attempt to extend the same to the Conveyances of the Mother's Realty because the settlement agreement

4. The analysis is somewhat different for, but the result is ultimately the same with respect to, the Debtor's unrecorded August 25, 1999 residuary interest assignments. In particular, the property that would have passed by virtue of the residuary clauses in the wills of the Debtor's deceased parents (hereafter "the Residuary Interest Property") would not have become property of the Debtor until its distribution from the executors of such deceased parents' estates; upon the death of such decedents, such property would have been owned by such executors. *See* 20 Pa.C.S.A. § 301(a) (Purdon's 2005). Therefore, the Debtor would not have owned (a) the Residuary Interest Property from her deceased mother's estate until at some point in mid–1999 when it was distributed to her, and (b) the Residuary Interest Property from her deceased father's estate as of the date that she filed for bankruptcy given that a distribution with respect thereto had not yet, as of such date, occurred. Furthermore, for purposes of the PFTA and § 5109, "[a] transfer is not made until the debtor has acquired rights in the asset transferred." *See* 12 Pa.C.S.A. § 5106(4) (Purdon's 2005). Accordingly, any purported transfer by the Debtor of the Residuary Interest Property from her deceased mother's estate prior to mid–1999 would not be respected for purposes of the PFTA and § 5109; therefore, the earliest that such property could have been transferred, for such purposes, would be in mid–1999, which is within four years of January 17, 2003, thereby insulating the Trustee's fraudulent conveyance action vis-a-vis such property from attack via § 5109's four-year statute of limitations. As well, any purported transfer by the Debtor of the Residuary Interest Property from her deceased father's estate prior to January 17, 2003 (i.e., Debtor's bankruptcy petition filing date) would not be respected for purposes of the PFTA and § 5109; accordingly, such property could not have been transferred, for such purposes, prior to January 17, 2003, thereby insulating the Trustee's fraudulent conveyance action vis-a-vis such property from attack via § 5109's four-year statute of limitations.

in question deals neither explicitly nor implicitly with the Mother's Realty.[5]

Although the Defendants make several other points in response to the Trustee's position as to when the Conveyances are deemed to have occurred for purposes of the PFTA and § 5109, the Court is frankly bewildered as to the precise contours of the counter position that the Defendants attempt to predicate upon such points. In particular, the Defendants contend—and the Court does not even disagree, indeed the Court holds itself—that:

(1) until distribution of specifically devised realty is made from an estate to a devisee, the proper source of full legal title in such realty is in both the devisee and the personal representative, *see Maier v. Henning*, 525 Pa. 160, 578 A.2d 1279, 1282 n. 5 (1990); *Estate of Peterson*, 168 Pa. Cmwlth. 218, 649 A.2d 1007, 1008 n. 2 (1994);

(2) a devisee can convey his or her interests pre-distribution pursuant to an assignment, that such assignment need not be in any particular form, and that such assignment can even be oral, *see* 41 P.L.E. *Wills* § 574 at 102–103 (West 1961);

(3) an expectancy of an inheritance can be transferred by assignment;

(4) neither the Mother's Realty nor the Father's Realty had been distributed to the Debtor in 1993 when the Debtor allegedly conveyed away her interest in the same to herself and her husband; and

(5) a distribution of specifically devised realty must ultimately be made to the specific devisee notwithstanding

the title that such devisee possesses in such realty as of the date of death of the devising decedent, *see Brown, Executrix v. Bailey*, 84 Pa.D. & C. 269, 275 (1952); 29 *Standard Pennsylvania Practice* 2d § 144:6 (West 2005).

The foregoing notwithstanding, however, the Defendants fail to inform the Court as to, and it is far from clear to the Court just what is, the precise significance of such points vis-a-vis the Trustee's aforesaid position regarding the timing of the Conveyances for purposes of the PFTA and § 5109.

For instance, the Court is uncertain if the Defendants wish to make the following argument, to wit that, in 1993, the Debtor could not have assigned away her ownership interest in the realty specifically devised to her, when they point out to the Court (a) the lack of a distribution of such specifically devised realty to the Debtor as of 1993, (b) the ultimate need for such distribution, and (c) the fact that, in 1993, the Debtor shared legal title to the specifically devised realty with an estate representative. Such argument—if it is intended—is at once perplexing and, in any event, unavailing. Such argument is perplexing because the Defendants concede that, as a matter of law, interests obtained by specific devise may be assigned pre-distribution. Such argument is unavailing, in any event, because that the Debtor shared in 1993 legal title to the realty specifically devised to her, and that such realty had not at that time yet been distributed to her from her parents' estates, did not serve to defeat the Debtor's ability to alienate her interest in such real-

---

**5.** Of course, the foregoing preclusion argument by the Defendants also necessarily fails to the extent that an attempt is made to extend the same to an assignment by the Debtor of the Residuary Interest Property from her deceased mother's estate given that such settlement agreement fails to deal with any property that the Debtor obtained from her deceased mother's estate.

ty in 1993. *See Bailey*, 84 Pa.D. & C. at 272–277; *DiLoretto v. Marsidell, Inc.*, 414 Pa. 572, 200 A.2d 890, 891–893 (1964); *see also* 32 *Standard Pennsylvania Practice* 2d § 152:118 (West 2005) (3rd ¶). Furthermore, if what the Defendants wish to argue is that the Debtor could not have conveyed away her ownership interest in such realty in 1993, then, it would seem to the Court, that such argument is at odds with the Defendants' position that she successfully assigned her interest in such realty in 1993.

▮▮▮▮ Perhaps what the Defendants wish to argue is that (a) back in 1993, that is pre-distribution, what the Debtor possessed in the way of ownership vis-a-vis the Mother's Realty and the Father's Realty was a share—in conjunction with estate representatives—of bare legal title, (b) all of the equitable title to all of such realty rested with such estate representatives back in 1993 and up until distribution of such realty to the Debtor, and (c) such equitable title thus could not have been transferred by the Debtor to herself and her husband back in 1993. Such argument—if it is intended—is also unavailing for several reasons. First, what a devisee of realty obtains via a will as of the date of a decedent's death is not just bare legal title to such realty but rather full title to such realty—both legal and equitable—subject to potential divestment by an estate representative. *See Lohr Estate*, 3 Pa.D. & C.3d 307, 318 (1977) ("Although the fiduciary[—i.e., estate representative—] retains certain broad legal powers over decedent's real estate, including the power of sale ..., until a sale occurs the legal *and beneficial[—i.e., equitable—]* title are in the heir or devisee"); *Bailey*, 84 Pa.D. & C. at 274–275 (until powers of personal representative are exercised, full title to devised realty remains in devisee, which title entitles devisee, from date of

decedent's death, to rents from realty, but also, at the same time, obligates devisee to pay for maintenance, repairs, and taxes attendant to such realty); *DiLoretto*, 200 A.2d at 891–893 (devisee assigned away full, that is legal and equitable, title to realty prior to subsequent sale of the same by personal representative, and the issue then dealt with by court was whether personal representative's subsequent sale operated to divest devisee and devisee's assignee of such title); *see also* 32 *Standard Pennsylvania Practice* 2d § 152:118 (West 2005) (3rd ¶) ("The estate that an heir or devisee takes in a decedent's real property is a freehold estate, subject to divestiture by a sale of such property by a personal representative during settlement of the decedent's estate"). Therefore, if the Debtor, in 1993, actually conveyed away the interests that she then possessed in the Mother's Realty and the Father's Realty, what she so conveyed was both legal and equitable title therein subject to divestment. Second, even if it were the case that the Debtor, in 1993, did not then possess equitable title to the realty specifically devised to her, and that she would not have obtained such equitable title until such realty was ultimately distributed out to her from estate representatives, then, because such distributions did not occur until August 1999 and later, a subsequent conveyance of such equitable title by the Debtor necessarily could not have occurred until at some point within four years of January 17, 2003.

▮▮▮▮ As well, that the Defendants point out to the Court that an expectancy of an inheritance can be transferred by assignment leads the Court to question whether what the Defendants mean to argue is that what was allegedly assigned in 1993 by the Debtor, at least in part, was some sort of expectancy by her that she would one day acquire real estate interests

via her deceased parents' wills, which interests she had not yet actually acquired as of 1993—such expectancy so assigned might perhaps be of equitable title to the realty for which the Debtor indisputably possessed legal title as of 1993. Such argument is unavailing, however, for at least two reasons. First, such argument would fail if for no other reason than that what the Debtor possessed in 1993, as just set forth, was ownership interests in specifically devised realty—both legal and equitable title thereto—rather than an expectancy that the Debtor would subsequently acquire such ownership interests. Such argument would also fail, however, because, even if *arguendo* what the Debtor allegedly assigned in 1993 was only an expectancy of realty interests that she would subsequently acquire, and even if—as the Defendants appear to wish to argue—she did not actually acquire such realty interests until the distribution of such realty out to her in August 1999 and later, the transfer of such realty interests in that event, for purposes of the PFTA and § 5109, would nevertheless be deemed to have not occurred until August 1999 and later, that is when the Debtor actually acquired ownership of such realty interests, *see* 12 Pa.C.S.A. § 5106(4) (Purdon's 2005) (for purposes of the PFTA and § 5109, "[a] transfer is not made until the debtor has acquired rights in the asset transferred"). Thus, and as a matter of law, a transfer of an expectancy in property to be acquired in the future, pursuant to § 5106(4), is not respected for purposes of applying the PFTA and § 5109.[6]

Finally, perhaps the Defendants, by pointing out all of the foregoing to the Court, mean to argue that the alleged assignment in 1993 by the Debtor could not have been perfected so that, pursuant to 12 Pa.C.S.A. § 5106(3), such alleged transfer by the Debtor of her interest in the Mother's Realty and the Father's Realty would be deemed, for purposes of the PFTA and § 5109, to have occurred "when it bec[a]me effective between the debtor and the transferee," 12 Pa.C.S.A. § 5106(3) (Purdon's 2005) (that is supposedly in 1993. Unfortunately for the Defendants, such an argument is also unavailing (a) because, if the Debtor actually effected the assignment that she alleges took place in 1993, the subject of such assignment necessarily included, *inter alia*, her unequivocal share of title—both legal and equitable—in realty that had been specifically devised to her, which property interest constitutes, of course, an interest in realty the transfer of which, pursuant to § 351, may be perfected, and (b) even if the alleged 1993 transfer by the Debtor was perhaps effected only in oral rather than written fashion, given that realty interest transfers that are effected orally, as a matter of law, are not excepted from the reach of § 351, that is such transfers must be recorded (i.e., perfected)—which, of course, necessarily means that they must also first be reduced to some form of writing—or they shall yield to subsequent recorded transfers otherwise done without actual or constructive notice of such oral transfers, *see Yancey v. Philadelphia Housing Authority*, 42 Pa.D. & C.2d 597, 600–601 (1967).

In light of all of the foregoing, the Trustee's fraudulent conveyance action is not time barred by § 5109's four-year statute of limitations, which means that the Defendants' motion to dismiss cannot be granted on a statute of limitations ground.

### III.

The Defendants base their dismissal motion grounds of *res judicata* and collateral

---

6. 12 Pa.C.S.A. § 5106(4) also operates to defeat any sort of "expectancy" argument that the Defendants might perhaps be making with respect to the Residuary Interest Property.

estoppel upon a veritable litany of litigation that has previously occurred within the instant bankruptcy case, as well as litigation involving the Debtor in the Orphans' Court Division of the Pennsylvania Court of Common Pleas, Washington County (hereafter "the Orphans' Court"). In particular, the Defendants appear to argue that each of the following, in one way or another, operates, by virtue of *res judicata* and/or collateral estoppel, to bar the Trustee's fraudulent conveyance action:

(1) Bankruptcy Judge Judith Fitzgerald's February 26, 2004 court order entered in the instant bankruptcy case (hereafter "Judge Fitzgerald's Court Order"),[7] wherein Judge Fitzgerald approved an agreement between co-administrators for the estate of the Debtor's deceased father (hereafter "the Co–Administrators"), on the one hand, and the Defendants, on the other hand (hereafter "the Settlement Agreement")—the Settlement Agreement operated to resolve both (a) an objection to exemption brought by the Co–Administrators in the instant bankruptcy case, which exemption objection is the lone piece of litigation that the Co–Administrators commenced in the instant bankruptcy case, and (b) nonbankruptcy litigation that was then pending in the Orphans' Court between the Co–Administrators and the Debtor, which litigation pertained to various issues connected to the Co–Administrators' administration of the Debtor's deceased father's estate.

(2) A March 25, 2004 court order by the Orphans' Court also approving the Settlement Agreement (hereafter "the Orphans' Court Order")—because Judge Fitzgerald's Court Order necessarily only disposed of that litigation before her that was also the subject of the Settlement Agreement, that is the aforesaid exemption objection, the Orphans' Court Order needed to be obtained so as to dispose of the aforesaid nonbankruptcy litigation that was pending in the Orphans' Court that was also the subject of the Settlement Agreement.[8]

(3) Judge Fitzgerald's implicit overruling of an objection to her approval of the Settlement Agreement, which objection was raised by Robert Ceisler, a creditor of the Debtor, both in writing and orally at the February 26, 2004 hearing regarding such approval request—Ceisler was able to raise such objection because the motion to approve the Settlement Agreement in the Bankruptcy Court was served upon all creditors in the instant bankruptcy case, at the direction of Judge Fitzgerald, so as to afford any such creditor an opportunity to object to such approval.[9]

---

7. Judge Fitzgerald presided over the instant bankruptcy case while it was in Chapter 11 status and up until the conversion of said case to Chapter 7 on November 29, 2004.

8. Of course, because the nonbankruptcy litigation pending in the Orphans' Court affected property of the Debtor's bankruptcy estate, settlement of such litigation via the Settlement Agreement also necessitated approval of such agreement by Judge Fitzgerald.

9. Margaret Soviero, a sister of the Debtor, lodged the only other objection to the approval of the Settlement Agreement. The Court does not understand the Defendants to base their *res judicata*/collateral estoppel position upon such objection by Soviero in any way. However, in the unlikely event that such position by the Defendants is also predicated upon such objection, such position is summarily rejected by the Court given that such objection had nothing remotely to do with the

(4) The fact that the Debtor was ultimately able to survive two objections to exemptions raised in the instant bankruptcy case so as to be able to tentatively exempt, *inter alia,* substantial property that is presently the subject of the Trustee's instant fraudulent conveyance action—one of the exemption objections is the aforesaid one raised by the Co–Administrators, while the other one was raised by Margaret Soviero, a sister of the Debtor.

(5) Soviero's complaint, filed at Adversary Proceeding No. 03–2401, wherein she pled, *inter alia,* an objection to the Debtor's discharge under 11 U.S.C. § 727(a)(2)–(5).

The Trustee, as one would expect, argues that none of the foregoing operate, by virtue of either *res judicata* or collateral estoppel, to bar his fraudulent conveyance action.

■■■ The Court shall apply federal principles of *res judicata* and collateral estoppel with respect to decisions rendered by a federal court, and must apply corresponding state principles with respect to decisions rendered by a state court. *See Wolstein v. Docteroff (In re Docteroff),* 133 F.3d 210, 214 (3rd Cir.1997) (citing *Heiser v. Woodruff,* 327 U.S. 726, 732, 66 S.Ct. 853, 855–56, 90 L.Ed. 970 (1945)) (federal principles are applied to a federal decision); *Delaware River Port Authority v. Fraternal Order of Police,* 290 F.3d 567, 573 (3rd Cir.2002) ("A federal court looks to the law of the adjudicating state to determine ... [the] preclusive effect" to be accorded a state court decision); *In re Hashem,* 2000 WL 1480274 at *2 (Bankr. E.D.Pa.2000) ("Because the Judgment was rendered by the State Court, Pennsylvania law on collateral estoppel must be applied"). Thus, the Court shall apply federal principles of *res judicata* and collateral estoppel with respect to all of the decisions/litigation set forth in the five paragraphs above save for the Orphans' Court Order, for which decision the Court shall apply corresponding Pennsylvania law respecting such doctrines.

■■■ With respect to federal principles of *res judicata,* "[c]laim preclusion [ (i.e., *res judicata* ) ] does not apply unless the present claim was or could have been raised in the prior proceeding." *CoreStates Bank, N.A. v. Huls America, Inc.,* 176 F.3d 187, 203 (3rd Cir.1999); *see also In re Piper Aircraft Corp.,* 244 F.3d 1289, 1296 & 1303 (11th Cir.2001) (same). "Claim preclusion [under federal law also] requires: (1) a final judgment on the merits in a prior suit involving; (2) the same parties or their privities; and (3) a subsequent suit based on the same cause of action." *CoreStates Bank,* 176 F.3d at 194 & 205; *see also Piper Aircraft,* 244 F.3d at 1296 (same). "In deciding whether two suits are based on the same 'cause of action,' we take a broad view, looking to whether there is an 'essential similarity of the underlying events giving rise to the various legal claims.'" *CoreStates Bank,* 176 F.3d at 194 (quoting *United States v. Athlone Industries, Inc.,* 746 F.2d 977, 984 (3rd Cir.1984)). However, with respect to the issue of similarity of causes of action, "[w]e are thus [nothing more than] in keeping with '[t]he present trend ... in the direction of requiring that a plaintiff present in one suit all the claims for relief *that he may have* arising out of the same transaction or occurrence.'" *Athlone Industries,* 746 F.2d at 984 (emphasis added). Therefore, two claims for relief—i.e., causes of action—are necessarily dissimilar if both could not have been brought in the prior proceeding in question.

issues that are now raised by the Trustee's fraudulent conveyance action.

■ As for federal principles of collateral estoppel, the Third Circuit, as set forth in its decisions over the years, has required varying combinations of the following elements to be present in order for collateral estoppel to apply:

(1) The issue sought to be precluded is the same as that decided in the prior action;

(2) That issue was actually litigated in the prior action;

(3) The resolution of that issue was determined by a valid and final judgment on the merits;

(4) The resolution of such issue must have been essential to the prior judgment;

(5) The party against whom the bar of collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and

(6) The party against whom such bar is asserted had a full and fair opportunity to litigate the issue in question in the prior action.

*See Temple University v. White,* 941 F.2d 201, 212 (3rd Cir.1991) (listing as necessary elements 1, 3, 5 & 6 set forth above); *Delaware River,* 290 F.3d at 573 n. 10 (listing elements 1, 3, 5 & 6); *Docteroff,* 133 F.3d at 214 (listing elements 1–4); *Henglein v. Colt Industries Operating Corp.,* 260 F.3d 201, 209 (3rd Cir.2001) (apparently listing elements 1, 2, 4 & 6); *see also Berwind Corp. v. Apfel,* 94 F.Supp.2d 597, 611 (E.D.Pa.2000) (citing U.S. Supreme Court and Third Circuit decisions; listing elements 1–4 & 6). This Court consequently holds that each of the six foregoing elements must be shown in order for collateral estoppel effect to be accorded to a federal decision.

As it turns out, Pennsylvania law regarding *res judicata* and collateral estoppel is essentially the same as federal law, that is essentially the same elements must be shown for *res judicata* or collateral estoppel effect to be accorded to a Pennsylvania decision. *See* 28 P.L.E.2d *Judgment* § 222 at 280–81 (Bender 2003) (*res judicata*); § 223 at 284–88 (collateral estoppel). Therefore, the Court can apply the same principles of *res judicata* and collateral estoppel to each of the five decisions/litigation set forth earlier herein, including the Orphans' Court Order.

For the reasons set forth below, the Court holds that none of the five decisions/litigation set forth above can be accorded *res judicata* or collateral estoppel effect.

### A. *Judge Fitzgerald's Court Order.*

■ As the Court understands it, the Defendants contend that Judge Fitzgerald's Court Order must be accorded *res judicata* and collateral estoppel effect so as to preclude the Trustee's fraudulent conveyance action because such court order approved the Settlement Agreement, which document, according to the Defendants, serves to establish, by agreement with the Co–Administrators, the propriety of the Debtor's assignment of all of her interest in her deceased father's estate to herself and her husband, allegedly in February 1993, and then again in August 1999. The Court detects numerous flaws in the Defendants' foregoing position.

First, the Court's examination of the Settlement Agreement reveals that the most that it does, relative to the Trustee's fraudulent conveyance action, is to contain *perhaps* an agreement between the Co-Administrators and the Defendants to the effect that the Debtor *actually* assigned all of her interest in her deceased father's estate to herself and her husband in February 1993 and again in August 1999. Even presuming *arguendo* such an agreement, notably absent from the Settlement

Agreement is a stipulation—either explicit or implicit—to the effect that such assignment was (a) effected, for purposes of relevant fraudulent conveyance law, that is the PFTA, in February 1993, (b) effected in return for consideration of any kind, let alone reasonable consideration, (c) not a fraudulent conveyance, or (d) proper in any other sense. Since the Settlement Agreement does not operate to establish either the propriety of, or the timing—for purposes of the PFTA—of, any such assignment of interest by the Debtor to herself and her husband, Judge Fitzgerald's Court Order, simply because it approved such document, necessarily cannot, by virtue of *res judicata* or collateral estoppel, serve to bar the Trustee's instant fraudulent conveyance action.

 Second, none of the elements that are needed for *res judicata* or collateral estoppel to apply are present with respect to Judge Fitzgerald's Court Order. In particular, the Court concludes as follows with respect to *res judicata* vis-a-vis Judge Fitzgerald's Court Order:

(a) Judge Fitzgerald's Court Order constitutes a final judgment. However, such judgment does not constitute a final judgment "on the merits" in the lone suit that was resolved by such court order, namely the Co–Administrators' objection to exemption,[10] given that Judge Fitzgerald ruled therein not as to the merits of such action but rather only as to the propriety of the settlement of such action.

(b) The Trustee was neither a party, nor in privity with a party, to the Co–Administrators' exemption objection because (i) the Trustee represents not only the interests of the

Co–Administrators—to the extent that they remain an unsecured creditor in the instant bankruptcy—and the Debtor herself but also the interests of the rest of the Debtor's present creditor body, and (ii) the rest of such creditor body was neither a party, nor in privity with a party, to the Co–Administrators' exemption objection, *see Marlar*, 252 B.R. at 757–58 (bankruptcy trustee not in privity with a lone creditor who brings an action against a debtor); *In re Shuman*, 78 B.R. 254, 256 (9th Cir. BAP 1987) (bankruptcy trustee in privity neither with a debtor nor a lone creditor). The Court holds that the rest of the Debtor's present creditor body was not in privity with the Co–Administrators vis-a-vis their exemption objection notwithstanding service upon such creditors of the motion to approve the Settlement Agreement because similar service of the Co–Administrators' exemption objection pleadings was never made.

(c) A fraudulent conveyance action such as is now brought by the Trustee was neither brought nor, more importantly, could have been brought by the Co–Administrators when they brought their exemption objection. The preceding necessarily follows because (i) such exemption objection, by necessity, was, and could only have been, brought post-petition, (ii) only the Trustee, the Debtor (as a debtor-in-possession), or a bankruptcy estate representative appointed by the Court, as a matter of law, has the legal authority to bring a fraudulent conveyance action post-petition, and (iii) the Co–Administrators were

---

**10.** While the Settlement Agreement operated to settle the Orphans' Court litigation as well, such litigation was not pending before Judge Fitzgerald and so her court order could not have served to dispose of the same.

neither the Trustee, the Debtor, nor such an appointed estate representative.

(d) That a fraudulent conveyance action was neither brought nor could have been brought by the Co–Administrators when they brought their exemption objection also serves to distinguish the fraudulent conveyance action now brought by the Trustee from such exemption objection, that is they are not the same causes of action.

As well, the Court concludes as follows with respect to collateral estoppel vis-a-vis Judge Fitzgerald's Court Order:

(a) An examination of the Co–Administrators' exemption objection reveals that they objected to the exemption by the Debtor of her interest in her deceased father's estate because they questioned, at the time, whether such interest was, in fact, then held by her with her husband as tenants by the entirety, not whether a transfer that created such tenancy by the entirety was avoidable. Therefore, issues pertinent to, as well as the ultimate issue of, whether the Debtor engaged in a fraudulent conveyance were not even raised by the Co–Administrators in their exemption objection, let alone decided by a valid and final judgment on the merits. Furthermore, even if *arguendo* Judge Fitzgerald's Court Order indirectly operates to decide the issue of when the Debtor *actually* assigned all of her interest in her deceased father's estate, such issue is decidedly different from the timing issue raised by the Trustee's fraudulent conveyance action, that is when such assignment occurred *for purposes of the PFTA (i.e., relevant fraudulent conveyance law)*. More-

over, and as the Court has already held above, nothing with respect to the Co–Administrators' exemption objection was decided by a judgment on the merits since Judge Fitzgerald's Court Order does not constitute a final judgment "on the merits."

(b) No issues were actually litigated with respect to the Co–Administrators' exemption objection, let alone issues regarding a fraudulent conveyance by the Debtor, given that such exemption objection was settled rather than adjudicated. Furthermore, had such exemption objection proceeded to a determination on the merits, whether the Debtor engaged in a fraudulent conveyance would not have been essential to a determination by Judge Fitzgerald given that the Co–Administrators could have prevailed as well if they could have proven the lack of any effective conveyance by the Debtor.

(c) For the reason that, for purposes of *res judicata,* the Trustee was neither a party, nor in privity with a party, to the Co–Administrators' exemption objection, the Trustee, for purposes of collateral estoppel as well, is neither such a party nor in privity therewith.

(d) Because the Trustee was not such a party and lacked such privity, the Trustee had no opportunity, let alone a full and fair opportunity, to litigate any of the issues that were raised by the Co–Administrators' exemption objection.

In light of all of the foregoing, Judge Fitzgerald's Court Order cannot be accorded *res judicata* and collateral estoppel effect so as to preclude the Trustee's fraudulent conveyance action. As an aside, the Court holds that even if Judge Fitzgerald's Court Order could be accord-

ed such *res judicata* and collateral estoppel effect, it could nevertheless not operate so as to preclude the Trustee's fraudulent conveyance action with respect to the Debtor's assignment to herself and her husband of her interest in her deceased mother's estate. The Court so rules because neither the Settlement Agreement nor Judge Fitzgerald's Court Order deals explicitly or implicitly with an assignment by the Debtor of her interest in her deceased mother's estate.

### B. *The Orphans' Court Order.*

■ As the Court understands it, the Defendants contend, much like they do with respect to Judge Fitzgerald's Court Order, that the Orphans' Court Order must be accorded *res judicata* and collateral estoppel effect so as to preclude the Trustee's fraudulent conveyance action because such court order approved the Settlement Agreement. Unfortunately for the Defendants, the Court determines that most, if not all, of the same flaws that were identified above with respect to the Defendants' preclusion position vis-a-vis Judge Fitzgerald's Court Order also exist with respect to the Orphans' Court Order; moreover, the Court identifies one additional reason for rejecting the Defendants' preclusion position to the extent that it is based upon the Orphans' Court Order.

First, and as the Court has already held above, the Settlement Agreement does not operate to establish either (a) the propriety of any assignment of interest by the Debtor to herself and her husband of her interest in her deceased father's estate, or (b) the timing of any such assignment for purposes of the PFTA. Consequently, the Orphans' Court Order, simply because it approved the Settlement Agreement, necessarily cannot, by virtue of *res judicata* or collateral estoppel, serve to bar the Trustee's instant fraudulent conveyance action.

■ Second, most, if not all, of the elements that are needed for *res judicata* or collateral estoppel to apply are not present with respect to the Orphans' Court Order. In particular, the Court concludes as follows with respect to *res judicata* vis-a-vis the Orphans' Court Order:

(a) The Orphans' Court Order, although a final judgment, does not constitute a final judgment "on the merits" in the lone litigation that was resolved by such court order, namely the Orphans' Court litigation between the Co–Administrators and the Defendants, given that the Orphans' Court ruled therein not as to the merits of such action but rather only as to the propriety of the settlement of such action.

(b) The Trustee was neither a party, nor in privity with a party, to the Orphans' Court litigation because (i) the Trustee represents the entirety of the Debtor's present creditor body, and (ii) the overwhelming bulk of such creditor body was neither a party, nor in privity with a party, to the Orphans' Court litigation. The bulk of the Debtor's present creditor body was not in privity with the Co–Administrators vis-a-vis the Orphans' Court litigation for at least two reasons, namely (i) because pleadings with respect thereto were not served upon such creditors, and (ii) because, in contrast to the process by which Judge Fitzgerald approved the Settlement Agreement, none of the Debtor's general unsecured creditors were offered any sort of opportunity to object in the Orphans' Court to that court's approval of the Settlement Agreement.

(c) The Trustee's fraudulent conveyance action does not constitute the same cause of action as the Orphans' Court litigation because at least some of the operative facts that give rise to such fraudulent conveyance action—such as, for instance, whether (i) the Defendants gave reasonable consideration in return for a conveyance by the Debtor of her interest in her deceased father's estate, and (ii) the Debtor was insolvent when she engaged in such conveyance—were irrelevant to the Orphans' Court litigation.

As well, the Court concludes as follows with respect to collateral estoppel vis-a-vis the Orphans' Court Order:

(a) Issues pertinent to, as well as the ultimate issue of, whether the Debtor engaged in a fraudulent conveyance were not even raised by the Co–Administrators in the Orphans' Court litigation, let alone decided therein by a valid and final judgment on the merits. Furthermore, even if *arguendo* the Orphans' Court Order indirectly operates to decide the issue of when the Debtor *actually* assigned all of her interest in her deceased father's estate, such issue is decidedly different from the timing issue raised by the Trustee's fraudulent conveyance action, that is when such assignment occurred *for purposes of the PFTA (i.e., relevant fraudulent conveyance law)*. Moreover, the Orphans' Court Order, as set forth above, does not constitute a final judgment "on the merits," which necessarily means that nothing with respect to the Orphans' Court litigation was decided by a judgment on the merits.

(b) Because the Orphans' Court litigation was settled rather than adjudicated, no issues therein, let alone issues relevant to a fraudulent conveyance by the Debtor, were actually litigated. Furthermore, because the Orphans' Court litigation had nothing to do with whether the Debtor engaged in a fraudulent conveyance or the timing thereof, a determination regarding the latter issues would not have been essential to a resolution by the Orphans' Court regarding the litigation that was pending before it.

(c) For the reason that, for purposes of *res judicata*, the Trustee was neither a party, nor in privity with a party, to the Orphans' Court litigation, the Trustee, for purposes of collateral estoppel as well, is neither such a party nor in privity therewith.

(d) Because the Trustee was not such a party and lacked such privity, the Trustee had no opportunity, let alone a full and fair opportunity, to litigate any of the issues that were raised in the Orphans' Court litigation.

Third, the Orphans' Court states in the last paragraph of the Orphans' Court Order that "[t]his Order addresses only the settlement of the issues between Elizabeth Ciaffoni Cowden and Robert A. Cowden, Sr. and the Co–Administrators of the Estate of Paul Ciaffoni presented in the aforesaid Petition. This Order shall have no precedential value as to any other party or issue." The inclusion of such language in the Orphans' Court Order prevents such order from having any preclusive effect (a) upon the balance of the Debtor's present creditor body, let alone the Trustee, and (b) with respect to issues pertinent to, as well as the ultimate issue of, whether the Debtor engaged in a fraudulent conveyance, given that such issues were neither raised within the context of the Orphans'

Court litigation nor, consequently, settled via the Settlement Agreement.

 In light of all of the foregoing, the Orphans' Court Order cannot be accorded *res judicata* and collateral estoppel effect so as to preclude the Trustee's fraudulent conveyance action. As an aside, the Court holds that even if the Orphans' Court Order could be accorded such *res judicata* and collateral estoppel effect, it could nevertheless not operate so as to preclude the Trustee's fraudulent conveyance action with respect to the Debtor's assignment to herself and her husband of her interest in her deceased mother's estate. The Court so rules because neither the Settlement Agreement nor the Orphans' Court Order deals explicitly or implicitly with an assignment by the Debtor of her interest in her deceased mother's estate.

### C. *Judge Fitzgerald's implicit overruling of Ceisler's objection to her approval of the Settlement Agreement.*

Although Judge Fitzgerald never entered a written order that specifically overruled Ceisler's objection to her approval of the Settlement Agreement (hereafter "Ceisler's Objection"), she necessarily, and thus implicitly, overruled such objection given that she ultimately approved such document. The Court will accept, for the purpose of resolving the instant dismissal motion, that such implied decision by Judge Fitzgerald is final for purposes of applying the doctrines of *res judicata* and collateral estoppel. Furthermore, the Court finds that the basis for Ceisler's Objection is, *inter alia,* an allegation by Ceisler—which allegation the Court can only describe as decidedly cryptic or obscure—to the effect that the Debtor fraudulently conveyed away her interest in her deceased father's estate. Must Judge Fitzgerald's implicit overruling of Ceisler's Objection be accorded *res judicata* or collateral estoppel effect so as to preclude the Trustee's instant fraudulent conveyance action? The Court answers the foregoing question in the negative for many reasons.

 First, with respect to *res judicata,* the Court holds that none of the four requisite elements regarding such doctrine are met by Judge Fitzgerald's aforesaid implicit overruling. In particular:

(a) A fraudulent conveyance action such as is now brought by the Trustee was neither brought nor, more importantly, could have been brought by Ceisler when he brought his objection to the approval of the Settlement Agreement. Such is the case because Ceisler was neither the Trustee, the Debtor, nor an appointed bankruptcy estate representative, which means that he lacked the authority and, thus, the capacity to have brought such an action when he so objected.

(b) Judge Fitzgerald's implicit overruling, even if accorded finality, nevertheless was not "on the merits" given that she only overruled Ceisler's Objection on the ground that it had not been brought in a timely fashion.

(c) The Trustee was not in privity with Ceisler because (i) the Trustee represents the entirety of the Debtor's present creditor body, not just Ceisler, and (ii) the balance of the Debtor's creditor body was not in privity with Ceisler. The balance of the Debtor's present creditor body was not in privity with Ceisler vis-a-vis Ceisler's Objection notwithstanding service upon such creditors of the motion to approve the Settlement Agreement because similar service of Ceisler's Objection was never made.

(d) That a fraudulent conveyance action was neither brought nor could have been brought by Ceisler when Ceisler's Objection was brought serves to distinguish such causes of action, that is they are not the same causes of action.

■ Second, the Court holds that most of the requisite elements regarding collateral estoppel are not met by Judge Fitzgerald's aforesaid implicit overruling. In particular:

(a) Although the issue of a fraudulent conveyance by the Debtor was raised in cryptic fashion within Ceisler's Objection, it was nevertheless raised therein. Unfortunately for the Defendants, such issue was never actually litigated—instead, such issue, as well as the remainder of Ceisler's Objection, was disposed of by Judge Fitzgerald on the procedural ground of having been raised in an untimely fashion.

(b) Because of the nature of such disposition by Judge Fitzgerald, her implicit overruling cannot constitute a judgment "on the merits."

(c) Because Judge Fitzgerald was able to dispose of Ceisler's Objection on a procedural ground, the resolution of issues raised therein such as, for instance, whether the Debtor engaged in a fraudulent conveyance, was necessarily not essential to her implicit overruling.

(d) For the reason that, for purposes of *res judicata,* the Trustee was not in privity with Ceisler vis-a-vis Ceisler's Objection, the Trustee, for purposes of collateral estoppel as well, lacks such privity with Ceisler.

(e) Because the Trustee lacked such privity with Ceisler, the Trustee had no opportunity, let alone a full and fair opportunity, to litigate any of the issues that were raised by Ceisler's Objection.

■ In light of all of the foregoing, Judge Fitzgerald's implicit overruling of Ceisler's Objection cannot be accorded *res judicata* or collateral estoppel effect so as to preclude the Trustee's instant fraudulent conveyance action. As an aside, the Court holds that even if Judge Fitzgerald's implicit overruling of Ceisler's Objection could be accorded such *res judicata* and collateral estoppel effect, it could nevertheless not operate so as to preclude the Trustee's fraudulent conveyance action with respect to the Debtor's assignment to herself and her husband of her interest in her deceased mother's estate. The Court so rules because Ceisler, within Ceisler's Objection, alleged only that the Debtor fraudulently conveyed away her interest in her deceased father's estate; Ceisler did not make a similar allegation with respect to the Debtor's interest in her deceased mother's estate.

**D. *The exemption objections of the Co–Administrators and Soviero.***

As the Court understands it, the Defendants wish to have *res judicata* and/or collateral estoppel effect be accorded to their survival of the exemption objection process vis-a-vis that particular property that is presently the subject of the Trustee's instant fraudulent conveyance action so as to bar such action by the Trustee. As an initial matter, the Court identifies only two exemption objections to which the Defendants could refer when making their foregoing preclusion position, namely the exemption objections of (a) the Co–Administrators, and (b) Soviero. Because the applicability of *res judicata* and collateral estoppel depend, *inter alia,* upon the existence of a valid and final judgment, which judgments relative to such exemption ob-

jections can potentially be accorded preclusive effect?

■ With respect to the Co–Administrators' exemption objection, the judgment that finally disposed of the same is Judge Fitzgerald's Court Order (i.e., the one dated February 26, 2004). Because, as set forth above in great detail, Judge Fitzgerald's Court Order cannot be accorded *res judicata* and collateral estoppel effect so as to preclude the Trustee's fraudulent conveyance action, the Court necessarily must also conclude that the resolution of the Co–Administrators' exemption objection cannot serve, by way of *res judicata* or collateral estoppel, to bar such action by the Trustee.

■ As for Soviero's exemption objection, the court order that finally disposed of the same is that entered by Judge Fitzgerald on February 12, 2004 (hereafter "the February 12, 2004 Court Order"), which court order (a) states that such exemption objection is withdrawn, and (b) was entered in response to Soviero's praecipe—i.e., request—to have such exemption objection withdrawn. Can the February 12, 2004 Court Order be accorded *res judicata* and/or collateral estoppel effect so as to bar the Trustee's instant fraudulent conveyance action? The Court answers the foregoing question in the negative, and the Court does so despite the fact that Soviero alleges, albeit cryptically and only in her reply to the Debtor's response to her exemption objection, that the Debtor fraudulently conveyed away her interests in her deceased parents' estates.

■ First, with respect to *res judicata,* the Court holds that none of the four requisite elements regarding such doctrine are met by the February 12, 2004 Court Order. In particular:

(a) A fraudulent conveyance action such as is now brought by the Trustee was neither brought nor, more importantly, could have been brought by Soviero when she filed her exemption objection. Such is the case because Soviero was neither the Trustee, the Debtor, nor an appointed bankruptcy estate representative, which means that she lacked the authority and, thus, the capacity to have brought such an action when she so objected.

(b) The February 12, 2004 Court Order, while clearly a final judgment, was not rendered "on the merits" given that (i) it essentially operated to dismiss Soviero's exemption objection without passing upon the merits thereof, (ii) a dismissal by court order, as a matter of law, is without prejudice—and thus not an adjudication upon the merits—unless otherwise specified in the order, *see* Fed. R.Civ.P. 41(a), 28 U.S.C.A. (West 1992) (Rule 41(a) is made applicable by Fed.R.Bankr.P. 7041 & 9014(c)), and (iii) Judge Fitzgerald did not specify in the February 12, 2004 Court Order that Soviero's exemption objection was being withdrawn or dismissed with prejudice.

(c) The Trustee was not in privity with Soviero because (i) the Trustee represents the entirety of the Debtor's present creditor body, not just Soviero, and (ii) the balance of the Debtor's creditor body was not in privity with Soviero. The balance of the Debtor's creditor body was not in privity with Soviero vis-a-vis her exemption objection because, *inter alia,* such exemption objection and Soviero's praecipe to withdraw the same were not served upon such creditors.

(d) That a fraudulent conveyance action was neither brought nor could have

been brought by Soviero when she filed her exemption objection serves to distinguish such causes of action, that is they are not the same causes of action.

Second, the Court holds that many of the requisite elements regarding collateral estoppel are not met by the February 12, 2004 Court Order. In particular:

(a) Although Soviero raised within her exemption objection, albeit cryptically, the issue of a fraudulent conveyance by the Debtor, such issue was never actually litigated—instead, such issue, as well as the remainder of Soviero's exemption objection, was withdrawn by her so that actual litigation never occurred.

(b) The February 12, 2004 Court Order, as just set forth in the discussion regarding *res judicata*, was not a final judgment that was rendered "on the merits."

(c) For the reason that, for purposes of *res judicata*, the Trustee was not in privity with Soviero vis-a-vis her exemption objection, the Trustee, for purposes of collateral estoppel as well, lacks such privity with Soviero.

(d) Because the Trustee lacked such privity with Soviero, the Trustee had no opportunity, let alone a full and fair opportunity, to litigate any of the issues that were raised in her exemption objection.

In light of all of the foregoing, the February 12, 2004 Court Order cannot be accorded *res judicata* or collateral estoppel effect so as to preclude the Trustee's instant fraudulent conveyance action, which necessarily means as well that the resolution of Soviero's exemption objection cannot serve, by way of *res judicata* or collateral estoppel, to bar such action by the Trustee.

### E. *Soviero's objection to discharge under § 727(a)(2)–(5).*

Soviero, in her objection to the Debtor's discharge under § 727(a)(2)–(5), alleges that the Debtor fraudulently conveyed away her interest in both her deceased father's and deceased mother's estates. Soviero's objection to discharge was ultimately disposed of by a February 4, 2004 Order of Court entered by Judge Fitzgerald (hereafter "the February 4, 2004 Court Order"), which court order approved a stipulation between Soviero and the Debtor to the effect, *inter alia*, that such objection to discharge was to be dismissed with prejudice. Because the dismissal of Soviero's objection to discharge was with prejudice, the February 4, 2004 Court Order constitutes a final judgment on the merits. The Defendants maintain that *res judicata* and/or collateral estoppel effect must be accorded the February 4, 2004 Court Order. Are the Defendants correct? For the reasons set forth below, the Court concludes that they are not.

First, the Court holds that only one of the four requisite elements regarding *res judicata* is met by the February 4, 2004 Court Order, namely that such court order constitutes a final judgment on the merits. The other three *res judicata* elements are not met for the following reasons:

(a) A fraudulent conveyance action such as is now brought by the Trustee was neither brought nor, more importantly, could have been brought by Soviero when she brought her objection to discharge. Such is the case because Soviero was neither the Trustee, the Debtor, nor an appointed bankruptcy estate representative, which means that she lacked the authority and, thus, the capacity to

have brought such an action when she so objected.

(b) The Trustee was not in privity with Soviero because (i) the Trustee represents the entirety of the Debtor's present creditor body, not just Soviero, and (ii) the balance of the Debtor's creditor body was not in privity with Soviero. The balance of the Debtor's creditor body was not in privity with Soviero vis-a-vis her objection to discharge because, *inter alia,* such objection to discharge and the stipulation for dismissal of the same were not served upon such creditors.

(c) That a fraudulent conveyance action was neither brought nor could have been brought by Soviero when she filed her objection to discharge serves to distinguish such causes of action, that is they are not the same causes of action.

■ Second, the Court holds that only one of the six requisite elements regarding collateral estoppel is met by the February 4, 2004 Court Order, namely, once again, that such court order constitutes a final judgment on the merits. The other five collateral estoppel elements are not met for the following reasons:

(a) Although issues regarding fraudulent conveyances by the Debtor were raised in Soviero's objection to discharge, such discharge objection, had it been decided by virtue of actual litigation, would have needed to yield, and thus would only have yielded, a decision on but one issue, namely whether such alleged fraudulent conveyances occurred within one year of, or subsequent to, the date of the Debtor's bankruptcy petition filing. Such is the case because the fraudulent conveyances alleged by Soviero to have been made by the Debtor, which conveyances are precisely those now pursued by the Trustee in his fraudulent conveyance action, concededly occurred more than one year prior to the date of the Debtor's bankruptcy petition filing, whereas only fraudulent conveyances occurring within one year of, or subsequent to, the date of the Debtor's bankruptcy petition filing (i) are, as a matter of law, actionable under § 727(a), *see* 11 U.S.C.A. § 727(a)(2) (West 2004), and (ii) thus could have been pursued via Soviero's objection to discharge. Because the one aforesaid issue that would have been solely decided via Soviero's objection to discharge is irrelevant to the issues that will need to be decided within the Trustee's fraudulent conveyance action, the threshold collateral estoppel element that the issue sought to be precluded in the fraudulent conveyance action be the same as that decided in the prior discharge objection cannot be met.

(b) No issues were actually litigated within Soviero's objection to discharge. Moreover, given the analysis just set forth in the preceding paragraph, the Court must hold that the issues sought to be precluded in the Trustee's fraudulent conveyance action did not need to be, and thus would never have been, litigated in such objection to discharge.

(c) Thus, the resolution of the issues sought to be precluded in the Trustee's fraudulent conveyance action would not have been essential to a prior judgment respecting Soviero's discharge objection had such judgment been rendered after litigation (instead of consensually).

(d) For the reason that, for purposes of *res judicata,* the Trustee was not in privity with Soviero vis-a-vis her objection to discharge, the Trustee, for purposes of collateral estoppel as well, lacks such privity with Soviero.

(e) Because the Trustee lacked such privity with Soviero, the Trustee had no opportunity, let alone a full and fair opportunity, to litigate any of the issues that were raised in her objection to discharge.

In light of all of the foregoing, the February 4, 2004 Court Order cannot be accorded *res judicata* or collateral estoppel effect so as to preclude the Trustee's instant fraudulent conveyance action, which necessarily means as well that the resolution of Soviero's objection to discharge cannot serve, by way of *res judicata* or collateral estoppel, to bar such action by the Trustee.

### F. *Summary regarding res judicata and collateral estoppel.*

In light of all of the foregoing, the Court holds that none of the five decisions/litigation set forth above can be accorded *res judicata* or collateral estoppel effect so as to bar the Trustee's fraudulent conveyance action. Therefore, the Defendants' motion to dismiss cannot be granted on the basis of either *res judicata* or collateral estoppel.

### IV.

█ The Defendants also argue that the Rooker–Feldman doctrine operates to bar the Trustee's fraudulent conveyance action.

█ "The Rooker–Feldman doctrine ... is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280, 125 S.Ct. 1517, 1521–22, 161 L.Ed.2d 454 (U.S. 2005). "Stated differently, the Rooker–Feldman doctrine prevents aggrieved parties from collaterally attacking state court judgments in the lower federal courts." *Colonial First Properties, LLC v. Henrico County Virginia,* 236 F.Supp.2d 588, 595 (E.D.Va.2002); *see also Marshall v. Lauriault,* 372 F.3d 175, 180 (3rd Cir.2004) (same).

The Rooker–Feldman doctrine asks: is the federal plaintiff seeking to set aside a state judgment, or does he present some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party? If the former, then the district court lacks jurisdiction; if the latter, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.

*GASH Associates v. Village of Rosemont, Illinois,* 995 F.2d 726, 728 (7th Cir.1993).

█ Drawing from the above statements of the law, the Court identifies at least two elements that must be present before the Rooker–Feldman doctrine can apply to bar a federal court plaintiff's claim, namely that (a) such plaintiff have been either a party or in privity with a party to the state court action upon which the bar of Rooker–Feldman is predicated, *see ITT Corp. v. Intelnet International Corp.,* 366 F.3d 205, 216 n. 19 (3rd Cir. 2004); *E.B. v. Verniero,* 119 F.3d 1077, 1092 (3rd Cir.1997); *Marshall,* 372 F.3d at 180; *Colonial First Properties,* 236 F.Supp.2d at 595, and (b) the federal court claim be the same as that which was ruled upon at the state-court level, *see Colonial*

*First Properties,* 236 F.Supp.2d at 595; *Exxon Mobil,* 544 U.S. 280, 125 S.Ct. at 1527, 161 L.Ed.2d 454; *GASH Associates,* 995 F.2d at 728. Of course, the Rooker–Feldman doctrine also necessarily only applies if the prior judgment upon such doctrine's bar is predicated was rendered by a state court. Applying the foregoing law to the instant matter, the Court holds that the Rooker–Feldman doctrine is inapplicable with respect to, that is it does not operate to bar, the Trustee's fraudulent conveyance action for several reasons.

First, the only judgment upon which the Defendants can conceivably predicate their Rooker–Feldman position is the Orphans' Court Order given that such court order is the only one referred to by the Defendants which was rendered by a state court; the remainder of the court orders referenced by the Defendants in their papers were rendered by a bankruptcy court judge. Second, focusing upon the Orphans' Court Order, the Court holds, as it previously did when considering the Defendants' *res judicata* and collateral estoppel position, that (a) the Trustee was neither a party, nor in privity with a party, to the Orphans' Court litigation that was ultimately settled by the entry of the Orphans' Court Order, and (b) the Trustee's fraudulent conveyance action does not constitute the same cause of action as the Orphans' Court litigation.

Third, and as an aside, the Court concludes—as it also did when considering the Defendants' *res judicata*/collateral estoppel position—that the independent cause of action that is presently brought by the Trustee, that is his fraudulent conveyance action, does not even deny a legal conclusion that the Orphans' Court reached when rendering the Orphans' Court Order. The Court so holds because neither the Settlement Agreement nor, consequently, the Orphans' Court Order operated to establish either (a) the propriety of any assignment of interest by the Debtor to herself and her husband of her interest in her deceased father's estate, or (b) the timing of any such assignment for purposes of the PFTA. The conclusion drawn by the Court in the instant paragraph constitutes an aside, the Court points out, because, even if the Trustee's fraudulent conveyance action did serve to deny a legal conclusion that was reached by the Orphans' Court when it rendered the Orphans' Court Order, such would not support, as the law set forth above indicates, a finding that the Rooker–Feldman doctrine bars such action by the Trustee given the Court's analysis as set forth in the preceding paragraph herein.

In light of all of the foregoing, the Rooker–Feldman doctrine does not operate to bar the Trustee's fraudulent conveyance action, which means that the Defendants' motion to dismiss cannot be granted on the basis of an application of the Rooker–Feldman doctrine.

## V.

Having addressed and rejected each of the various grounds upon which the Defendants base their motion to dismiss the Trustee's complaint, **the Court determines that it shall issue an order denying such dismissal motion with prejudice.**

### ORDER OF COURT

**AND NOW,** this **30th day** of **January, 2006,** for the reasons set forth in the accompanying Memorandum Opinion of the same date, it is hereby **ORDERED, ADJUDGED, AND DECREED** that the Defendants' motion to dismiss the Trustee's complaint is **DENIED WITH PREJUDICE.**